## JOHN WATTS v. WILLIAM BONNER AND WIFE.

1. TRUST-DEED.  *Given to secure future advances. Cancellation, when refused. Rights of parties.*

   Where there is an agreement between a merchant and a customer, that the latter is to obtain certain advances from the former, and is to execute a trust-deed to secure the indebtedness, and also that a collateral contract is to be entered into between the parties defining the rights of each, after receiving a large part of the advances and executing the trust-deed, the debtor cannot have cancellation of the same on the ground merely that the creditor has refused to sign and deliver the contract and to complete the advances. This is true although the trust-deed is taken by an agent of the creditor with the understanding that it shall go for naught if the contract is not executed as originally agreed upon. If in such case the debtor is damnified, he may secure a reduction from the amount actually advanced; but these facts do not entitle him to cancellation of the trust deed.

2. SAME.  *Agreement to advance. Security fraudulently obtained. Not enforceable.*

   In such case if the debt was contracted without any agreement for security, and the creditor obtains a mortgage or trust-deed under promise of future advances he does not intend to make, the security would be fraudulently obtained and therefore not enforceable. *Gross* v. *McKee,* 53 Miss. 536.

3. SAME.  *Partial failure to make advances. Security enforceable pro tanto. Damages recouped.*

   But if the creditor takes a mortgage to secure a certain sum agreed and intended to be advanced, and fails to advance the entire amount, the security may nevertheless be enforced for the amount actually advanced, subject to the right of the debtor to have a reduction to the extent of any loss directly traceable to the breach of contract by the creditor and fairly within the contemplation of the parties as a natural result from such breach, and which could not by reasonable effort have been avoided by the party disappointed. *Coleman* v. *Galbreath,* 53 Miss. 303, cited.

FROM the chancery court of Jones county.

HON. T. B. GRAHAM, Chancellor.

Appellees, Bonner and wife, filed the bill in this case to enjoin a sale under a deed of trust executed by them, and for cancellation of the deed. On final hearing the court decreed in favor of complainants, and defendants appealed.

The opinion of the court states the facts and the questions of law involved.

*Fewell & Brahan,* and *Miller & Baskin,* for appellant.

1. The court below considered the testimony, including the certificate or memorandum made by Niagara Fall, justice of the peace, as showing that there was no valid execution of the trust-deed. This memorandum was not official, and the justice had no power to bind anybody by it. Certainly it could not nullify his certificate of acknowledgment appended to the deed; he could not falsify that certificate.

The deed was signed and delivered, and the acknowledgment was officially taken and authenticated, and the validity of these acts cannot be affected by proof of a contemporaneous parol agreement evidenced by this certificate. It could have no more effect than parol proof going to show that Bonner stated at the time that he would not be bound by the deed.

If this statement had specified to what extent the trust-deed was to be qualified or modified, it might be contended that the two instruments should be considered together. But the statement contains nothing definite, and of itself amounts to nothing. To give it any effect, outside testimony is required, and to admit this would be a plain violation of the rule that parol testimony cannot be allowed to vary the terms of a written instrument.

2. We do not consider that there is any sufficient testimony in the case to sustain the court below in finding that there was a breach of the contract which had the effect of nullifying the trust-deed and entitling appellee to have it cancelled.

The only question is, did Bonner execute the deed?

The case shows that he did, and the outside statement of the justice of the peace is not to be considered as having any force.

On the whole record, it seems clear to us that there was no evidence sufficient to warrant the court in cancelling the trust-deed, for the alleged failure of Watts and Patton to keep any contract made by them.

*Nugent & McWillie,* for appellees, filed an elaborate written argument based on the facts of the case, in which the following points were made:

1. The testimony of the complainant William Bonner, sustained

by that of the witness Gray, who was present when the agreement was entered into between Bonner and Watts, fully sustains the allegations of the bill as to the terms of the original agreement.

2. The conduct of Watts is at variance with his statements as a witness. He delayed fixing the papers, and then intrusted the business to his agents to secure the execution of a deed which he no doubt knew he could not himself get signed.

3. At the time the trust-deed was executed, the parties stood in the relation to each other simply of debtor and creditor.

4. McIntosh and Fall were the agents of Patton & Co., and appellant is bound by what they did at the time the trust-deed was executed. Their testimony, apart from any other in the case, shows that the deed ought not to be enforced.

5. The deed was obtained through false and fraudulent representations that were not carried out and were never intended to be.

6. When the trust-deed was taken Patton & Co. were insolvent and were preparing to make an assignment, and hence knew they could not make the advances as agreed. Of this Bonner and wife knew nothing at the time; but when the fact developed and it transpired that Patton & Co. could not comply with the contract, Bonner used all possible efforts to continue his business and to reduce his damages.

7. Relying upon the promises of Patton & Co. to make the advances, Bonner embarked largely in business enterprises, and was crippled and greatly damnified because of the failure of the other parties to furnish him the means stipulated for. But for the credit agreed to be extended him, he would not have undertaken such enterprises. His loss is therefore directly traceable to the failure of the other parties to comply with the contract. He should not be made to suffer this loss and at the same time be compelled to pay for the advances that were made.

8. The record presents issues of fact and the testimony was conflicting. The chancellor credited the testimony for complainant: it cannot be shown that any injustice was done the appellant.

COOPER, J., delivered the opinion of the court.

Watts and Patton, who were merchants under the firm name of W. H. Patton & Co., agreed to make certain advances to Bonner, who was engaged in the turpentine business and in farming, to enable him to carry on his said business, and the advances were to be secured by the execution of a deed of trust which Bonner and wife were to execute. In addition to the deed of trust, both parties contemplated the making of a written contract evidencing the agreement into which they had entered. The matter for some months rested in parol, and during this interval goods, money and supplies were advanced by Watts and Patton to Bonner, to the amount of fifteen hundred dollars. On the 15th of March, Watts and Bonner met and it was agreed between them that Watts would on the next day send an agent with the contract and deed of trust to Bonner's residence (he living some distance in the country) for execution. Accordingly on the next day, A. T. McIntosh, the agent of Watts and Patton, and one Fall, a justice of the peace, who had been notified to attend for the purpose of taking the acknowledgment of Bonner and wife to the deed of trust, went to Bonner's residence. McIntosh produced a deed of trust and a contract, both of which had been prepared under Watts' direction, and tendered them to Bonner for execution. The deed of trust recited that Bonner was then indebted to Patton & Co. in the sum of fifteen hundred dollars, and that other advances might be made during the year, but there was no stipulation making it obligatory upon Patton & Co. to make such other advances. The contract contained no agreement for the advance of any sum exceeding fifteen hundred dollars. Bonner objected to both the deed and contract because, as he asserted, Patton & Co. were to bind themselves to furnish him goods and money to the extent of three thousand five hundred dollars; and to the contract the further objection was made that it did not contain a stipulation that Patton & Co. were to pay him two dollars and fifty cents per barrel for all crude turpentine made in new boxes up to a certain date, two dollars and twenty-five cents for all such made after that date during the year, and one dollar and fifty cents per barrel for all turpentine taken from old boxes.

McIntosh explained to Bonner that he had no authority to change the contract or deed of trust, and Bonner refused to execute them as they were written. After ineffectual efforts by McIntosh to induce Bonner to execute the instruments as written, in reliance upon his assertion that Patton & Co. would do whatever they had promised to do, it was finally agreed that Bonner and wife should sign and acknowledge the deed of trust only; that the contract should be returned to Patton & Co. for correction, and if they refused to correct it, then, that the execution of the deed should go for naught. Bonner being assured both by McIntosh and Fall, the justice of the peace, that he would be thereby fully protected if the agreement was certified by the justice, executed, with his wife, the deed of trust. At the same time the justice (intending to authenticate the agreement of the parties) wrote out and delivered to Bonner the following paper:

"STATE OF MISSISSIPPI, }
     JONES COUNTY.          }

"Owing to the incompleteness of the contract if not agreeable arrange the deed of trust entered into this day between W. H. Patton & Co. of the first part and Wm. Bonner and wife of the second part, is to be null and void, otherwise to remain in full force and effect.

This March 15, 1886.                              N. FALL, J. P."

The deed of trust was taken by McIntosh and delivered by him to Watts, McIntosh informing him at the same time of the agreement made with Bonner. Watts and Patton a day or two after this were forced by pecuniary embarrassments to make an assignment for the benefit of their creditors, and their business was closed and never re-established, and no further advances were made to Bonner by them, nor was the contract above referred to ever corrected, "agreeably" to Bonner.

By some transaction between the assignee of Patton & Co. and Watts, the latter has become the holder of the deed of trust and the debt thereby secured; and default having been made in payment of the debt, he caused the property to be advertised for sale by the trustee under the power conferred in the deed. The bill

in this cause was exhibited by Bonner to secure cancellation of the deed and a perpetual injunction against its execution.

Bonner's contention is that since the contract was never corrected as it was agreed should be done, the deed is rendered void by reason of the defeasance or condition named in the certificate given to him by the justice of the peace at the time of the execution of the deed. Watts denies that there was any agreement made between his firm and Bonner other than that set out in the contract as originally drawn and tendered to Bonner, and since, as he contends, Bonner was not entitled justly to have any change in the contract, he should not be permitted to avoid the security. The further objection is set up that neither McIntosh nor Fall, the justice of the peace, had authority to make the agreement set forth in the certificate.

A third defense is made, resting upon general principles of equity jurisprudence, viz.: that since Bonner admits the debt to be due, he ought not to be afforded any relief except upon condition that he shall do equity by paying the sum due and secured by the deed.

We do not express any opinion upon the issue as to the terms of the contract agreed on by the parties. The chancellor seems to have disposed of the cause upon other grounds, viz.: that the deed could not be held as security for any sum except upon condition that Patton & Co. should reform the contract in conformity with Bonner's contention, and, since this was not done, that Bonner was entitled to cancellation.

Since the certificate given by the magistrate was intended by the agent, McIntosh, to represent the agreement of the grantors and beneficiaries in the deed, and since its execution as such was the condition on which Bonner executed the deed, of all of which Watts was informed when the deed was delivered to him by McIntosh, it does not lie with him to accept the benefit of the deed and at the same time repudiate the authority of the agent to do the thing which he did as agent, and the doing of which secured the deed.

Accepting the benefit of his agent's act, he must ratify the whole transaction.

But we do not think compliance with the terms of the certificate was made a condition precedent to the delivery of the deed of trust. Bonner states in his bill that the deed was delivered because he was informed that Watts desired it as a basis of credit in certain transactions he professed to be about to make. These representations he charges were fraudulently made, and he seeks to be relieved, not because there was no delivery, but because it was fraudulently obtained. We find no support in the record of this charge, and in our view the right of the appellee most strongly stated is to have relief because something stipulated to be subsequently done was not performed. He testified that after the execution of the deed he sought to obtain supplies from the merchants Watts and Patton, and this must have been upon a recognition of the validity of the security (if the supplies should be advanced) and a consequent right to the supplies.

If it appeared that Patton & Co., having a mere pre-existing debt with no just right to security under the previous contract, procured the execution of the deed under promise of future advances they then did not intend to make, the principle announced in the case of *Gross* v. *McKee*, 53 Miss. 536, would apply, and the security would have been fraudulently obtained. This seems to have been the theory upon which the bill in this cause was framed, but it was not supported by the evidence. We think if complainant's contention in reference to the terms of the contract be accepted as true, the facts would bring the controversy and the rights of the parties fairly within the rules laid down in *Coleman* v. *Galbreath*, 53 Miss. 303. It was there held that where the merchant agreed to advance a certain sum and as security therefor took a mortgage upon the property of the debtor and failed to make the advances stipulated for, the creditor might enforce the security for the amount actually advanced, subject to the right of the debtor to have a reduction to the extent "of any loss directly traceable to the breach of contract by the other party, and fairly within the contemplation of the contracting parties, as a natural result from such breach of contract, and which could not by reasonable effort have been avoided by the party disappointed."

Whatever would have been the result if the beneficiaries were actors seeking to enforce the deed at law, the rule of equity that requires a complainant seeking cancellation of an instrument by the aid of a court of conscience to do equity, brings this case within the operation of the principle of the last cited case.

As we have said, we express no opinion upon the facts relative to the real terms of the contract made between the parties; we only decide that if complainant's version be accepted as correct, the relief to which he is entitled falls within the limits above noted.

*The decree is reversed and cause remanded.*