Argued January 24, decided February 25, rehearing denied October 6, 1908.

## ABERNETHY v. UHLMAN.

[93 Pac. 936; 97 Pac. 540.]

CHATTEL MORTGAGES—ADVANCES—BREACH OF CONTRACT—FORECLOSURE

1. Where a chattel mortgagee agrees to advance a definite amount, but only a portion thereof is advanced, the mortgagee may nevertheless foreclose the mortgage for the amount due, subject to a set-off for any damages the mortgagor may have suffered by reason of the mortgagee's failure to advance the whole sum.

LANDLORD AND TENANT—CROPPING CONTRACT—NATURE OF RELATION.

2. A lessor and lessee under a cropping contract are tenants in common in the crop, and if the lessee mortgages his interest, the mortgagee is subrogated only to the lessee's rights and interest, and to the extent of his mortgage is a tenant in common with the lessor, so that, in order to claim as against the lessor, the mortgagee must fulfill the lessee's contract.

SAME—PRESERVATION—LIEN FOR ADVANCES.

3. Plaintiffs leased certain land to G. for hop culture for one-third of the crop, which it was G.'s duty to harvest and bale. G. mortgaged his two-thirds

to defendants to secure $1,500 advances to enable him to make the crop, but defendants, after advancing $700, refused to advance further sums, and, G· being unable to procure pickers, plaintiffs procured and paid them under an agreement with defendants' agent to pay the pickers when the work was finished. *Held*, that plaintiffs were not compelled to care for the crop in fulfillment of G.'s agreement in the mortgage for defendants' benefit to do so, but were entitled to advance money to harvest the whole crop in order to protect their own interest, so that G.'s share was applicable, first, to the payment of the costs and disbursements of the suit; second, to plaintiff's claim for advances; and, third, to the payment of defendants' mortgage.

SAME—ENFORCEMENT—PLEADING—VARIANCE.

4. Where a complaint alleged that a tenant under a cropping contract delivered the crop to the landlords as a pledge to secure money advanced by the latter to harvest the crop, and also that the tenant was unable to procure the labor to care for the crop and requested the landlords to assist him, and that they rendered services, hired laborers, and that defendants, mortgagees of the tenant's interest, directed and requested plaintiffs to cause the hops to be picked and baled, and agreed to pay the expenses, evidence that plaintiffs harvested the crop with tenant's consent, and were holding the same accordingly, was not a variance.

SAME—CROPPING CONTRACT—MORTGAGES.

5. Where a tenant under a cropping contract mortgaged his share of the crop, and was thereafter unable to procure funds with which to harvest the crop, which funds were thereupon advanced by the landlords, the fact that the harvesting was done by the tenant, would not defeat the landlords' right to priority for the amount so advanced as against the mortgagee.

LANDLORD AND TENANT—EQUITABLE LIENS.

6. Where a tenant agreed to make a crop and deliver one-third thereof to the landlord as rent, the landlord owned an undivided interest in every part of the crop, and his interest therein is as extensive as if it were a lien, and he is entitled to equitable protection as though a lienor.

From Yamhill: WILLIAM GALLOWAY, Judge.

This is a suit by Charles H. Abernethy by a cross-bill to an action against S. and F. Uhlman, as to the right to possession of 55 bales of hops. From a decree directing that the proceeds of a portion of the crop belonging to one Go Sun be applied *pro rata* on the claims of plaintiff and defendant, both parties appeal.

Statement by MR. JUSTICE EAKIN.

This is a suit commenced by cross-bill to an action pending as to the right to possession of 55 bales of hops, the conflict growing out of the following facts:

The plaintiffs leased to defendant, Go Sun, a Chinaman, 19 acres of hops for a term of five years from February, 1902, plaintiffs to furnish him with team,

tools, dryhouse, wood, poles, water, and dwelling, and to pay for one-half of the burlap and sulphur, Go Sun to cultivate, care for, harvest, cure, and bale the crop at his own expense, and when so harvested and baled, to deliver to plaintiffs one-third of such crop on the place, and on March 11, 1905, for the purpose of securing money with which to cultivate and harvest said crop under said lease for the year 1905, Go Sun made arrangements with defendants, S. and F. Uhlman, who were hop dealers, to advance to him $1,500. To secure the said Uhlmans for such advancement as should be made, he executed to them a chattel mortgage on his two-thirds of such crop for that year; the reference in the mortgage to such advancements being in the following language:

"That, whereas, the party of the first part expects to become indebted to the parties of the second part within six months from the date of this instrument, for advances and loans to be made by the parties of the second part to the party of the first part, to an amount not exceeding in the aggregate the sum of fifteen hundred ($1,500) dollars, gold coin of the United States, for which loans and advances the party of the first part is to execute to the parties of the second part one or more negotiable promissory notes, payable at such periods as may be agreed upon by the parties hereto, and bearing interest at the rate of 8 per cent per annum from the date of said notes and at the dates in schedule hereunto annexed."

To this is appended a schedule as follows:

"Schedule of dates when advances are to be made hereunder and notes given and amounts of each are as follows, about:

| | |
|---|---:|
| March 11, 1905, the sum of | $ 100 |
| April 15, 1905 | 50 |
| June 1, 1905 | 150 |
| September 1, 1905 | 600 |
| On close of picking, bal. | 600 |
| | $1,500" |

It appears also from the testimony of Judge Woodward and M. H. Gilbertson that defendants promised to advance said sum to Go Sun for such purposes; that prior to September 1, 1905, defendants, the Uhlmans, had advanced to Go Sun, under the terms of said mortgage, the sum of $700, and finally refused to advance any further sums; that on or about September 1, Go Sun was unable to procure laborers to pick said hops on his own credit, and applied to the plaintiffs to employ them for him, assuring plaintiffs that the money therefor would be advanced by the Uhlmans; and on or prior to September 6, plaintiffs secured the laborers for Go Sun, and expended for such labor and other expenses in harvesting the crop, $841.51. As security for the repayment thereof, Go Sun delivered the hops to them, whereupon the Uhlmans brought replevin to recover the hops under their mortgage, and plaintiffs brought this suit to establish their superior right to the hops to reimburse themselves for such advances. The lower court decreed that the liens of defendants S. and F. Uhlman and plaintiffs are equal, and that the proceeds of Go Sun's portion of the crop be applied *pro rata* upon the claims; and both parties appeal. REVERSED.

For appellant Uhlman there was a brief over the names of *Mr. William M. Kaiser* and *Mr. Woodson T. Slater,* with an oral argument by *Mr. Kaiser.*

For respondent Abernethy there was a brief over the names of *Messrs. McCain & Vinton* and *Mr. M. L. Pipes,* with an oral argument by *Mr. Pipes.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The question involved is whether plaintiffs' claim for such advances is superior to defendants' mortgage. Charles Abernethy testifies that Gilbertson, who was the agent for the defendants, S. and F. Uhlman, throughout this transaction, sent for him to come over to the El-

driedge yard on September 6, and while there Gilbertson gave him instructions to go ahead and gather the hops. He asked Gilbertson about picking money, and the latter said he would be on hand to pay the pickers when the work was finished. This is corroborated by Go Sun, who was present, and by Mrs. Eldriedge, who had a conversation with Gilbertson on the morning of that day. Gilbertson admits part of the conversation with Abernethy, but does not remember any of the conversation with him as to picking money for his place, and claims that his talk with Go Sun and Mrs. Eldriedge referred only to the Eldriedge yard, which was also cropped by Go Sun. Gilbertson was undoubtedly anxious that the crop should be harvested, and used this plan to interest Abernethy; and we conclude from the evidence and circumstances that Gilbertson did, on September 6, promise Abernethy and Go Sun, that he would be on hand at the close of the picking to pay the hands, and requested Abernethy to assume the liability of the harvesting and he would repay him. The general rule as to the effect of a mortgage given to secure advances, even where the mortgagee agrees to advance a definite amount, if only a part of such amount is advanced, the mortgagee may nevertheless foreclose the mortgage for the amount due, subject to a set-off for any damages the mortgagor may have suffered by reason of the failure of the mortgagee to advance the whole sum: *Coleman* v. *Galbreath,* 53 Miss. 303; *Watts* v. *Bonner,* 66 Miss. 629 (6 South. 187). But there are additional elements involved here which preclude the application of that rule. This promised advancement was for the accomplishment of a particular thing, namely, cultivating and harvesting the crop covered by the mortgage.

2. Plaintiffs were interested in the crop to the amount of their one-third as rental, and the mortgagees were in-

terested to the extent of Go Sun's two-thirds interest. Go
Sun's contract with the plaintiffs was to make a crop
for plaintiffs' benefit, and defendants were aware of
this duty and agreed to make the advance for that pur-
pose, and in case of any default by Go Sun, if necessary
*for their own protection, they must take his place.*
Plaintiffs were not compelled to remain indifferent and
see the crop lost. Nor were they compelled, for the
purpose of protecting their interests, to care for the
crop in fulfillment of Go Sun's agreement in the mort-
gage for the Uhlmans' benefit. Even if the mortgagees
were not under obligation to advance the money to
harvest the crop, they had the right, upon the failure
or inability of Go Sun, to furnish the money, in order
to prevent waste, and thus protect their security; but,
if they failed to do so, then plaintiffs, to save them-
selves, had a right to advance the money to care for
the crop, and to be first reimbursed therefor out of the
crop. The case is much stronger in plaintiffs' favor,
*by reason of the fact that the defendants,* the mort-
gagees, were under obligation to do this, and had
requested plaintiffs to incur the liability, and that they
would reimburse them. Plaintiffs' interest was an un-
divided one, and could not be segregated until the crop
was harvested, and to protect themselves they must
care for the whole crop. It is the law in Oregon that
the *lessor and lessee are tenants in common in the crop*
(*Cooper* v. *McGrew,* 8 Or. 327; *Messinger* v. *Union
Warehouse Co.* 39 Or. 546: 65 Pac. 808) ; and, although
the lessee may mortgage his interest, the mortgagee is
subrogated only to the lessee's rights and interest; and,
to the extent of his mortgage, is also a tenant in com-
mon with the lessor (*Sunol* v. *Molloy,* 63 Cal. 369;
*McGee* v. *Fitzer,* 37 Tex. 27; Jones, Chattel Mortgages,
§ 47). To claim any interest under the mortgage as
against the lessor the mortgagee must stand in the

shoes of the lessee and fulfill his contract. The Aber-
nethy's rights and remedies are the same against the
mortgagee as against the lessee.

3. It appears from the testimony that Go Sun was
unable to pick the hops without the money promised
by defendants. He went to Portland to employ pickers,
but came back without them, saying to Charles Aber-
nethy that he was unable to get pickers. They would
not come for him, so he asked Abernethy to go and
get them, with the assurance that defendants were to
advance the money to pay them. Plaintiffs did go to
Portland, and got pickers, pursuant to this request, viz.,
about 45, and brought them to the yard on or before
September 6. When Charles Abernethy came over to
the Eldriedge yard upon the request of Gilbertson, the
latter gave him instructions about picking the hops
and looking after the books, saying that he would be on
hand to pay the pickers when harvesting was completed.
He instructed Abernethy not to let the tickets go out
of the yard, that he, Abernethy, should have money on
hand to take care of them in the meantime, thus clearly
recognizing that Abernethy was in charge of the har-
vesting. Abernethy himself says that plaintiffs did the
picking, that they employed the pickers, worked in the
yard, and paid the help. It does not appear that Go Sun
had anything to do with the harvesting. When asked
how he got possession of the hops, Abernethy said that
after they were baled they were put in the storeroom
and stayed there; that they did not separate their third,
but all were put in together; and that he kept them.
When asked what Go Sun said as to Abernethy taking
charge of the hops and having a lien upon them, the
latter says that it was with his consent; thus showing
that the plaintiffs understood that they themselves had
charge of the crop during the harvesting, and that Go
Sun so recognized it. In *Hughes* v. *Johnson,* 38 Ark.
285, 296, it is said:

"It is further a well-settled principle in equity that one who has an interest in a security may advance what is fairly necessary to its preservation, and may retain the advances out of the proceeds before crediting any portion of his debt. There can, at least, be no doubt of that where such advances are made by the consent of all parties interested in the property or fund. * * This is not upon the idea that the security of the mortgage is thereby extended to other advances, but rather upon the consideration that the proceeds of the property have been diminished by the expenses of preservation."

That was a case of a chattel mortgage upon a growing cotton crop; a suit being brought by the mortgagor to compel an accounting of the crop and a cancellation of the mortgage, without payment of the advances to harvest it. *Wheat* v. *Watson*, 57 Ala. 581, was a case where the landlord had a lien by statute for the rental. The defendant Watson had a cropper's lien for $500 advanced to the tenants to enable them to make the crop. In July the tenants abandoned the crop. The landlord offered to permit the defendant to take the place of the tenants and to complete the crop, which he declined to do. The landlord then took charge of the crop and harvested it; and the question was whether the landlord was entitled to be reimbursed from the crop for such expenses, in preference to the defendant's lien for prior advances to the tenants.

It is held that if the defendant, when given the opportunity, fails to cultivate and gather the crop, he relinquishes to the landlord the whole crop, and, if he has any remedy, it is only for the surplus after the landlord is fully paid for the expenses of making the crop. It is held in *Caldwell* v. *Hall*, 49 Ark. 508 (1 S. W. 62: 4 Am. Rep.) that it is a well-settled principle in equity that one who has a lien on a growing crop may advance what is fairly necessary to prevent waste or destruction of the security, and

may retain the advances thus made out of the proceeds of the sale before crediting any portion of his debt. That was the claim of a mortgagee of a growing crop made for advances to care for and harvest the crop. We conclude, therefore, that plaintiffs were justified in taking care of the crop for their own protection, and may hold the crop for their expenses thus incurred.

4. It is insisted by defendants that, by the allegations of the complaint, Go Sun was in possession of the hops and yard at the time of the picking and baling, and that plaintiffs cannot now claim that they were in possession during the harvesting. The complaint does allege that after the picking, Go Sun delivered the hops to the plaintiffs as a pledge to secure the repayment of the money so advanced and expended by them; but it is also alleged that Go Sun was unable to procure the labor required to take care of the crop, and requested plaintiffs to assist him, and that plaintiffs rendered their services, hired and employed the laborers to pick and care for the crop, and that defendants directed and requested plaintiffs to cause the hops to be picked and baled, and they would pay the expenses therefor. In view of these allegations, we do not deem it a variance from the pleading for plaintiffs to prove that they harvested the crop with Go Sun's consent, and are holding the crop accordingly.

5. However, if the harvesting was done by Go Sun, that fact could not defeat plaintiffs' rights where it is alleged and proved that it was necessary for plaintiffs to advance the money to preserve the crop for the safety of their own interest therein.

Therefore the decree is reversed, and a decree rendered here that the proceeds of Go Sun's share of the crop be applied, first, in the payment of the costs and disbursements of this suit; and, secondly, to the payment of the claim of the plaintiffs, $841.51; and, thirdly,

to the payment of the mortgage debt of defendants, S. and F. Uhlman; and that the said Uhlmans have judgment against Go Sun for any balance remaining unpaid.                                                                REVERSED.

Decided October 6, 1908.

ON PETITION FOR REHEARING.

[97 Pac. 540.]

MR. JUSTICE EAKIN delivered the opinion of the court.

6. The point urged by the petition for rehearing is, that although the plaintiffs have no lien for their rental, yet the opinion is based on cases which authorize a lienor, when necessary for the protection of his lien, to make advances to a tenant upon a growing crop, and afterward to be reimbursed therefor out of such crop, both as against the tenant and prior liens. By the terms of the lease Go Sun was to make a crop, harvest it, and deliver to plaintiffs one-third thereof as rental; and, as stated in the opinion, the landlord and tenant, where the rental is a share of the crop, are tenants in common. The effect of such a state of facts is that the landlord is an owner of an undivided interest in every part of the crop, so that the production and harvesting of the whole crop is necessary to enable plaintiff to receive any part of his rental. It is such an interest in the whole crop that none of it can be removed until harvested and divided, and therefore is as extensive as though it were a lien.

The case of *Wheat* v. *Watson,* 57 Ala. 581, cited in the opinion, is a parallel case to the one before us. There the landlord, Wheat, leased his lands to L. & H., who were to crop it and deliver to plaintiff one-fourth of the crop after it was harvested; and Watson, the defendant, made advances to the tenants to aid them in making the crop, for which the statute gave him a

lien. Before the crop was matured the tenants abandoned it. The landlord finished the cultivation and harvesting, but before it was harvested Watson attached the interests of the tenants for his advances. Plaintiff contended that he was entitled to be reimbursed out of the tenants' interests for the expenses of the cultivation and harvesting in preference to the statutory lien of Watson for the advances; and the court so held, saying that when the tenants abandoned the premises it was not the duty of the landlord to let them remain unoccupied and unused, but he might enter, and from that time the contract is determined. The only practical difference between that case and the present one, is that in the former the landlord had a lien for his rental by statute; but the court, in concluding the opinion, say: "The right of the landlord to make the claim in such an action does not arise out of his lien for rent, but his ownership of the property." And in the case of *Hughes v. Johnson*, 38 Ark. 285, the reference to this right as existing in favor of one having "an interest in a security" is not necessarily limited to a lienor, but may include one having an interest in the property.

We deem the landowner's right in such a case as equally entitled to equitable protection as that of a lienor. The reason for it is even greater, as otherwise in such a case he would be compelled to make a crop to pay the tenant's debts or abandon all claim of income from his land. Go Sun could not get the men to harvest the crop, and so notified the plaintiffs; and plaintiffs, to secure their rental, were compelled to act. The case of *Sunol v. Molloy*, 63 Cal. 369, was cited in the opinion only to the point that the mortgagee of the tenant stands in no better position than the tenant in his relations to the landlord, and that he has no greater or other claim against the landlord than Go Sun had. And the landlord is not without remedy because his rental is

not a lien upon the crop. He has such an interest in the whole crop that· he may protect himself by caring for it when his tenant is unable to do so or abandons it, and repay himself for such expense out of the tenant's share, both as against the tenant and against his mortgagee. Defendants have no ground for complaint, as they agreed to do this themselves, and had the opportunity, but neglected it.

The petition is denied.

REVERSED: REHEARING DENIED.