Argued at Pendleton October 29, modified December 27, 1923, rehearing denied January 29, 1924.

## HENRY L. SOMMER, EXR., *v.* WM. EZELL, EMERY L. SEWELL AND ELGIN FLOURING MILL CO.

(221 Pac. 167.)

**Landlord and Tenant—Lessor Held Entitled to Expenses Incurred in Preserving Mortgaged Crop.**

Mortgagee of lessee's interest in a crop is subrogated only to lessee's rights therein, and must fulfill the latter's contract with lessor as to threshing and caring for the crop before satisfying his mortgage as against lessor, who is entitled to necessary expenses incurred in preserving the crop in consequence of lessee's breach of contract.

From Union: J. W. KNOWLES, Judge.

In Banc.

This is a suit to foreclose a chattel mortgage. From a decree in favor of plaintiff, defendant William Ezell appealed.

MODIFIED.   REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. L. Denham.*

For respondent there was a brief over the name of *Messrs. Green & Hess,* with an oral argument by *Mr. R. J. Green.*

BEAN, J.—The facts are substantially as follows: The defendant William Ezell being the owner of certain land on February 12, 1921, leased the same to defendant E. L. Sewell to cultivate upon shares; one third of the grain grown upon the land, to be delivered to William Ezell, harvested and sacked in sacks furnished by the lessor at the Elgin warehouse, Elgin, Oregon, free of expense to the lessor; Sewell, the lessee, to have two thirds of the grain. A crop was sown and cultivated to be harvested during the season of 1922. On May 23d of that year Sewell executed a mortgage on his undivided two thirds of the crop to D. Sommer, plaintiff, to secure the payment of a note of that date for the sum of $125 with interest and attorney's fees.

In order to enable Sewell to cultivate the land the plaintiff furnished him with seed amounting to $99.75, and also sold him four horses, wagon and harness, amounting to $247, taking Sewell's note therefor, by the terms of which the title to the property remained in Ezell's name until payment in full.

When the grain was shocked and in the field on August 8th, Sewell, the lessee, desired to relinquish the lease and agreed to vacate the premises not later than September 10, 1922. He executed a bill of sale in favor of William Ezell, the lessor, in consideration of the sum of $380 for a certain field of summer-fallow estimated at a value of $100, and a pair of horses, harness and his interest in the crop of wheat, in settlement of the account then due from him to Ezell for the seed, livestock, wagon and harness. The settlement appears to have been made up to that date. It was stipulated by Sewell in the bill of sale that the crop of wheat was to be delivered by him to Ezell at the warehouse at Elgin, Oregon, and upon being sold by Ezell "if any surplus remains after expenses are paid, same shall be paid by second party [Ezell] to first party" (Sewell).

Sewell attempted to sell the grain described in the mortgage to another party. Plaintiff, Sommer, deemed the conditions of the mortgage broken; brought suit to foreclose the same, making William Ezell the lessor and holder of the bill of sale and the Elgin Flouring Mill Company, in whose warehouse the grain was stored in the name of William Ezell, parties defendant. Ezell, by his answer, claimed a lien in the sum of $351.75 on Sewell's two-thirds share of the crop of wheat for the seed, horses, harness, wagon and cow furnished Sewell to enable him to raise the crop.

The Circuit Court found and the testimony showed that the property conveyed by Sewell to Ezell by the bill of sale was in full satisfaction of the indebtedness of Sewell to Ezell. We concur in this finding and whatever the rights of the parties may have

been in the first instance, these items can be eliminated from the case.

Defendant, Ezell, also pleaded and proved that after the execution of the bill of sale, it became necessary for him to furnish money to preserve the crop for the safety of his own interest therein; that he paid and became obligated to pay for threshing $15.12, for sacks and twine $16.60, for hauling said crop to the warehouse in Elgin, $12.50, total $44.22. Defendant, Ezell, also contested the chattel mortgage of plaintiff as having been executed in fraud of defendant Ezell's rights. The trial court found that the mortgage was valid and we concur in such finding.

This leaves only the expenses paid and incurred by the defendant, Ezell. The law stated in the case of *Abernethy* v. *Uhlman,* 52 Or. 359, at page 364 (93 Pac. 936, 938), governs in this case. We quote Mr. Justice EAKIN's language as follows:

"Plaintiffs' interest was an undivided one and could not be segregated until the crop was harvested, and to protect themselves they must care for the whole crop. It is the law in Oregon that the lessor and lessee are tenants in common in the crop (*Cooper* v. *McGrew,* 8 Or. 327; *Messinger* v. *Union Warehouse Co.,* 39 Or. 546, 65 Pac. 808); and, although the lessee may mortgage his interest, the mortgage is subrogated only to the lessee's rights and interest; and, to the extent of his mortgage, is also a tenant in common with the lessor (*Sunol* v. *Molloy,* 63 Cal. 309; *McGee* v. *Fitzer,* 37 Tex. 27; Jones, Chattel Mortgages, § 47). To claim any interest under the mortgage as against the lessor the mortgagee must stand in the shoes of the lessee and fulfill his contract. The Abernethy's rights and remedies are the same against the mortgagee as against the lessee."

By the terms of the bill of sale, which was a partial settlement of the matter between Ezell and Sewell, Sewell was to carry out the leasing contract as to the delivery of the wheat. He was not to vacate the premises until about a month after the execution of the bill of sale. It was to the interest of defendant Ezell, and also to the interest of the plaintiff Sommer, the mortgagee, that the crop of grain should be threshed, sacked and housed. It was according to the terms of the lease and also according to the terms of the bill of sale that this should be done by Sewell. Ezell never released Sewell from his obligation to deliver the wheat at the warehouse free of expense to the lessor. Sewell, having failed in this respect, it was proper for Ezell to incur such expense. Sommer, the mortgagee, is subrogated only to the lessee's rights and interest in the crop. Before satisfying his mortgage, as against Ezell, the lessor, he should fulfill the contract of Sewell, the lessee, as to threshing and caring for the crop.

The matter is quite small and seems not to have been provided for in the decree. The plaintiff, Sommer, as we understand his testimony, did not object to paying the necessary expense incurred in preserving the two thirds of the crop covered by his chattel mortgage.

The decree of foreclosure should provide that the expense of threshing, sacking and hauling the undivided two-thirds part of the crop embraced in the chattel mortgage should be first deducted from the proceeds of the sale of the mortgaged wheat. With this slight modification the decree of the trial is affirmed.        MODIFIED. REHEARING DENIED.