OCTAVE V. BAKER, APPELLANT, v. J. B. FENLEY, ET AL., RESPONDENTS.
—128 S. W. (2d) 295.

Kansas City Court of Appeals. April 3, 1939.

*H. C. M. Lamkin,* *W. C. Maughs* and *X. Q. Lindel* for appellant.

*Baker & Baker,* for respondent.

BLAND, J.—This is a suit in equity, seeking to have a promissory note, executed by the plaintiff in favor of the defendants, and a chattel mortgage and deed of trust securing the same, declared null and void, and to have defendants enjoined from taking possession of the property covered by the chattel mortgage and attempting to sell or dispose of the same, and for other relief.

Defendants filed an answer and cross-bill, containing a general denial. The cross-bill alleged that the note was due and unpaid. It asked judgment for the amount of the note with interest; that the judgment be declared a specific lien on the property described in the chattel mortgage and deed of trust and that the mortgage and deed of trust be foreclosed.

The court found the issues against the plaintiff on his cause of action and for the defendants on theirs and entered a judgment for the latter in the amount unpaid on the note and interest and ordered that the chattel mortgage and deed of trust be declared a first lien

upon the personal property and real estate, respectively, described therein; ordered that a special execution issue and that said personal property and real estate be levied on by the sheriff; that he proceed to sell the same according to law and sell as much thereof as necessary to satisfy the judgment and costs, and if they did not bring a sufficient sum to pay the same that a general execution be issued in favor of the defendants and against the plaintiff.

The facts show that plaintiff operated a filling station, restaurant and cabin resort in Callaway County, at which he sold 3.2 beer; that defendants, J. B. Fenley and Margaret M. Fenley are husband and wife and were engaged in the business of wholesaler of beers. Plaintiff claims that the evidence shows that J. B. Fenley was in partnership with Margaret M. Fenley. Margaret M. Fenley denied any such relationship and testified that she was in the business alone, but for the purpose of the case, we may assume that such relationship existed between them.

Plaintiff testified that he had a conversation with J. B. Fenley when he was ready to open his place; that he told Fenley that he needed $100 to get a beer license and money for other things; that Fenley told him if he would sell defendants' beer and soda water, exclusively, that he would lend the witness the needed money; that the witness agreed with Fenley to buy, exclusively, defendants' beer and soda water, with the exception of Budweiser and Coca Cola; that Fenley told him that defendants handled Falstaff, Alpen Brau, Green Tree and Capitol beer, all manufactured by four distinct companies, and that defendants were exclusive agents for these types of beer in this "territory."

Thereupon, plaintiff executed to defendants his note dated December 29, 1937 in the sum of $1605.77, bearing interest at the rate of 7 per cent per annum, payable $40 per month on the first day of each month, beginning January 1, 1938. To secure the note plaintiff executed a chattel mortgage upon the furniture, equipment and supplies on hand at his place of business and upon his filling station lease and, also, a deed of trust on certain real estate located in Callaway County (not the land upon which his place of business was situated). This note was given partly for cash needed in plaintiff's business at the time and partly for money to pay bills. It was also given to cover advances to be made by defendants in the future.

It appears that prior to the bringing of this suit the chattel mortgage was foreclosed. It was admitted at the trial that this foreclosure was void. No reason is shown why it was void but for all the record shows it may have been because the foreclosure proceedings were irregular.

Plaintiff testified that he complied with his part of the agreement and purchased only the beers sold by the defendants, with the exception of Budweiser and that he bought none other than their soda water.

The defendant, Margaret M. Fenley, denied that her husband was either her partner or her agent. She testified that he transacted some of her business; that she was a wholesaler of beers; that among the most popular brand of beer was Griesedieck, Country Club and Budweiser and there was nothing in her agreement with the companies whose beer she handled that prevented her from handling these three beers and she could have bought beers from companies making said brands of beer, but she had never attempted to do so; that at one time she handled Sterling ale, Green Tree and Cardinal; that she had no understanding with the Capitol Brewing Company with reference to the exclusive right to sell their beer "in this territory;" that she had no such agreement with the makers of Falstaff or Alpen Brau; that she could sell any one of these beers which she handled to any one who had a permit to sell beer; that her territory was not limited but, was limited in the sense that she could not "go several hundred miles" on account of the expense; that "the company" did not have any objection to her going to Mexico, Missouri, and selling beer; that she sold beer in Mexico, Missouri; that she thought there was someone else there who sold Alpen Brau or Capital Beers; that she sold beer in the territory consisting of Warren, Montgomery, Boone, Audrain and Callaway County; that she never sold any beer in Jefferson City; that she did not sell any across, or south, of the Missouri River because "there are distributors there" and she did "not have a chance to sell over there."

It appears that defendants had not paid all of the items for which the note was given, but had paid everything that was due at the time the suit was tried, except an amount of $50, which they agreed to pay for insurance for plaintiff. This had not been paid because the insurance could not be procured. The evidence shows that plaintiff has paid but $40, or the payment due on January 1st, 1938, on the note.

Plaintiff insists that defendants were guilty of the violation of that part of section 13139z-14 (see Laws 1935, p. 399) providing (in part): "Neither brewers or manufacturers of non-intoxicating beer, or their employees, officers, agents, subsidiaries or affiliates shall, under any circumstances, directly or indirectly, have any financial interest in the retail business for sale of such non-intoxicating beer, nor shall they, directly or indirectly, loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for such beer sold to such retail dealers." Section 13139z-20 (Laws 1933, p. 401) provides that "any person violating any of the provisions of this Act shall be deemed guilty of a misdemeanor" and fixes the punishment therefor.

Plaintiff does not claim that defendants, or either of them, were brewers or manufacturers of non-intoxicating beer. He does claim that they were agents, subsidiaries or affiliates of such brewers or

manufacturers. "An agency is the legal relation which arises when one party, called the agent, is authorized to represent and act for another party, called the principal, in bringing or to aid in bringing such principal in contractual relation with a third person, however, such authority may be conferred." [Keyser v. Hinkle and Adair, 127 Mo. App. 62, 72, 73.] "An agent is defined to be one who acts for or in the place of another by authority from him, one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do. The term 'agent' is one of wide signification, and in a general sense may therefore be said to apply to anyone who by authority performs an act for another, and includes a great many classes of persons to which distinctive appellations are given, as factors, brokers, attorneys, cashiers of banks, clerks, consignees, etc. The most characteristic feature of an agent's employment, in a legal sense, is that he is employed primarily to bring about business relations between the principal and third persons, and this power is perhaps the most distinctive mark of the agent as contrasted with others not agents, who act in representative capacities." [2 C. J. pp. 420, 421.]

While plaintiff does not claim that the defendants, or either of them, were "agents" in a legal sense, he does claim that they were agents in a popular sense. Popularly, one may be called the "Ford" agent, the agent for "Budweiser," or be referred to as having the "International Harvester" agency, when he is only a retailer of such type of automobile, or brand of beer, or harvester, with no relationship whatever of *respondeat superior* existing between him and the manufacturers of the article he handles. However, the statute before us is penal in its nature and, if there is any ambiguity in it, it must be strictly construed. [59 C. J., p. 1113.] We are, therefore, of the opinion that word "agent" as used in the statute should not be construed as meaning an agent in the popular sense.

Defendants were engaged in the business of wholesaler of non-intoxicating beer, and we do not think that they, as such, were subsidiarier or affiliates of the brewer or manufacturer of such beer. Webster defines "affiliate" as "to adopt; to receive into a family as a son; hence, usually, to bring or receive into close connection; to ally; to unite or attach as a member or branch." Of course, the word "affiliate" is used in connection with more than one relation. When the word is used in the statute it refers to a business relationship and not a personal one. Webster defines "subsidiary" to be "furnishing aid; auxiliary; tributary; esp., aiding in an inferior position or capacity; as a *subsidiary* stream," and gives as a syn. "Auxiliary." In relation to a company, he defines the word as "a company of the shares of stock in which another company has at least a majority, giving it control."

It is unnecessary for us to attempt the difficult task of giving a full and complete definition of either the words "subsidiary" or "affiliate," as they are used in a commercial sense. We do think that in order for such a relationship to exist that one body or person should have a financial interest, at least, in the other's business, or a voice in its management, to be either an affiliate or a subsidiary. There is no evidence that the manufacturers or brewers from whom defendants purchased beer had any financial interest in the latter's business, or a voice in its management and, consequently, defendants could not, in any sense, be said to be subsidiaries or affiliates of them.

However, plaintiff argues that the evidence shows that the defendants were backing the plaintiff in the business of retailing non-intoxicating beer; that they had a financial interest in his business; that the agreement was that plaintiff was to sell defendants' beer, exclusively, and the inference to be drawn from the evidence is that defendants agreed with certain brewers or manufacturers that they would sell only the latters' beer in that particular territory. Whether these facts, if true, would affect the question as to whether defendants were agents, affiliates or subsidiaries of the manufacturers or brewers from whom they purchased their beer, is not important, for the reason that most of the facts relied upon by the plaintiff, in this connection, are disputed and, while we may disagree with the conclusion of the chancellor as to the facts, the testimony on this point, being oral, we will defer with his conclusion as to the matter. [Hunnell v. Zinn, 184 S. W. 1154, 1157.] There is no question but that defendants were assisting plaintiff in his business by lending him money to procure his license to sell beer, and for other purposes connected with the business, but there is no evidence that they were "backing" him and no evidence that they had any financial interest in his business.

Not all of the evidence was set forth in full in appellant's abstract but a stipulation has been filed in this court to supply such omission. Whether this method of procedure complies with our rules, we will not pass upon. It is sufficient to say that the stipulation recites that there was testimony on the part of Margaret M. Fenley "That no agreement was made as testified to by plaintiff that plaintiff order respondents' beers exclusively, or almost exclusively." However, plaintiff contends that J. B. Fenley might have made such an agreement. The recitation in the stipulation is broad and it is not beyond the realm of possibility that Mrs. Fenley could have testified to a situation showing that neither she nor her husband made any such agreement. It was the duty of the plaintiff to print all of the testimony in full, this being an equity case. As before stated, we will not pass upon the effect of such failure, in view of the stipulation. However, plaintiff certainly is in no position to argue the matter in view of the wording of the stipulation and his failure to print the

exact testimony of Mrs. Fenley. J. B. Fenley did not testify. However, it is stated, in the brief, that he was too sick to attend the trial. There is nothing in the record concerning this matter.

Mrs. Fenley's testimony shows that she had no agreement with the manufacturers or the brewers who made the beers that she sold that she could not sell the beer of others. She denied that she was confined to any particular territory in the sale of beer. She testified that she did not sell in distant places for the reason that they were too far away from her place of business and the consequent expense of doing business there, and on account of their being distributors in the other places.

In addition to the clause set forth, *supra*, from section 13139z-14, appears a further, or second, clause reading as follows:

"All contracts entered into between such brewers or manufacturers or their officers, employees, directors or agents, in any way concerning any of their products obligating such retail dealers to buy or sell only the products of any such brewer or manufacturer or obligating such retail dealers to buy or sell the major part of such products, required by such retail vendors from any such brewer or manufacturer, shall be void and unenforceable in any court in this State, and proof of the execution of such contract shall forfeit the license of both the vendor and the vendee."

Defendants not being brewers, manufacturers, or agents of such, it appears that the provisions of section 13139z-14 just set forth have no application to the facts in this case. In addition, said second clause has no application because the chancellor was at liberty to believe that defendants did not require plaintiff to buy or sell only the products dealt in by defendants or to buy or sell the major part of such products required by plaintiff. Consequently, it is not established that, in the light of either clause of section 13139z-14, the contract entered into between plaintiff and defendants was void, making the note given in connection with the contract lacking in consideration.

Plaintiff points out that all of the items for which the note was given have not been paid by the defendants. However, an agreed statement of facts, filed in the trial court, recites that they have paid all amounts "now due on the contract" with the exception of $50 for insurance, which could not be paid because no insurance could be procured. The failure to pay the amounts not due on the contract does not create a partial failure of consideration for the note. There is nothing in the contract to indicate that no action could be brought on the note until all of these items had been paid and the note is absolute on its face. There is no merit in plaintiff's contention. [Desmond v. Friedman Doscher Co., 162 N. Y. 486, 490. See, also, Hewton v. Clark, 138 Ill. App. 196.]

As to the $50 which was to be paid for insurance, we think there

was a partial failure of consideration for the note as to this amount but this does not invalidate the security. [Muir v. Greene, 100 N. Y. S. 722.] The security can be enforced for the balance. [8 C. J., p. 753, 754; 41 C. J., p. 389; Coleman v. Galbreath-Steward Co., 53 Miss. 303; Watts v. Honner, 66 Miss. 629.]

The judgment, therefore, is reversed and the cause remanded with directions to the trial court to enter judgment for defendants in the amount of the note, less said sum of $50; that the judgment include interest on this reduced principal and that the chattel mortgage and deed of trust be foreclosed in accordance with the original decree. All concur.