# WILCOX *v.* EASTERN OREGON LAND COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 23. Submitted November 15, 1897. — Decided January 8, 1900.

The judgment in this case affirmed upon the authority of *United States* v. *Oregon and California Railroad Company.*

THE facts are stated in the opinion. The case was submitted November 15, 1897, and was, on the 29th of the same month, postponed until *The United States* v. *Oregon & California Railroad Co., ante,* 28, should be heard.

*Mr. John M. Geavin* for appellant.

*Mr. James K. Kelly* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case depends in part upon the construction of the act of Congress of July 2, 1864, 13 Stat. 365, c. 217, in aid of the

construction of the Northern Pacific Railroad. The provisions of that act, so far as they are material to the present controversy, are fully set forth in the opinion in *United States* v. *Oregon & California Railroad Company*, just decided.

By an act of February 25, 1867, Congress, in aid of the construction of a military wagon road in Oregon from Dalles City on the Columbia River, by way of Camp Watson, Canyon City and Mormon or Humboldt Basin, to a point on Snake River opposite Fort Boise in Idaho Territory, granted to the State of Oregon "alternate sections of public lands designated by odd numbers to the extent of three sections in width on each side of said road : *Provided*, That . . . any and all lands heretofore reserved to the United States or otherwise appropriated by act of Congress or other competent authority, be and the same are hereby reserved from the operation of this act, except so far as it may be necessary to locate the route of said road through the same, in which case the right of way to the width of one hundred feet is granted : *And provided further*, That the grant hereby made shall not embrace any mineral lands of the United States." 14 Stat. 409, c. 77.

Other sections of that act are as follows : " § 2. That the lands hereby granted to said State shall be disposed of by the legislature thereof for the purpose aforesaid, and for no other ; and the said road shall be and remain a public highway for the use of the Government of the United States, free from tolls or other charges upon transportation of any property, troops or mails of the United States." " § 4. That the State of Oregon is authorized to locate and use in the construction of said road an additional amount of public lands, not previously reserved to the United States nor otherwise disposed of, and not exceeding ten miles in distance from it, equal to the amount reserved from the operation of this act in the first section of the same, to be selected in alternate odd sections as provided in section first of this act. § 5. That lands hereby granted to said State shall be disposed of only in the following manner, that is to say, when the governor of said State shall certify to the Secretary of the Interior that ten continuous miles of said road are completed, then a quantity of the

land hereby granted, not to exceed thirty sections, may be sold, and so on from time to time until said road shall be completed ; and if said road is not completed within five years, no further sales shall be made, and the lands remaining unsold shall revert to the United States. § 6. That the United States surveyor general for the district of Oregon shall cause said lands so granted to be surveyed at the earliest practicable period after said State shall have enacted the necessary legislation to carry this act into effect."

Subsequently, by an act approved October 20, 1868, the State of Oregon granted to the Dalles Military Road Company all the lands, right of way, rights, privileges and immunities granted or pledged by the above act of February 25, 1867, " for the purpose of aiding said company in constructing the road mentioned and described in said act of Congress upon the conditions and limitations therein prescribed." The State also, by the same act, granted and pledged to that company ".all moneys, lands, rights, privileges and immunities which may be hereafter granted to this State to aid in the construction of such road for the purposes and upon the conditions mentioned in said act of Congress, or which may be mentioned in any further grants of money or lands to aid in constructing said road," and authorized it to locate the lands mentioned in the fourth section of the act of Congress, subject to the approval of the Governor. Sess. Laws 1868, p. 3.

The material facts out of which the present suit arises are alleged in the bill, and are substantially admitted in the answer. They are as follows:

Prior to June 23, 1869, the Dalles Military Road Company had duly surveyed and *definitely located* its line of road between the points designated by Congress and the State; had fully constructed and completed its road, and had filed in the office of the governor a plat or map upon which was traced and shown the definite location of the road from Dallas City to its terminus on Snake River, as well as the limits of the place and indemnity lands embraced by the act of Congress.

On the 23d day of June, 1869, the Governor certified that

such plat or map had been duly filed in his office, and that it showed the route upon which the road was constructed in accordance with the above acts of Congress and of the legislature of Oregon; also, that he had made a careful examination of the road since its completion, and that the same had been built in all respects as required by those acts and had been accepted.

The above map and the certificate of the Governor were filed by the company in the office of the Secretary of the Interior, and on December 18, 1869, the Commissioner of the General Land Office, by order of the Secretary, withdrew from sale in favor of the company the odd-numbered sections within three miles from each side of the wagon road as delineated and shown on the maps so filed.

By an act of Congress approved June 18, 1874, it was provided that "in all cases when the roads in aid of the construction of which said lands were granted are shown by the certificate of the Governor of the State of Orgeon, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the State of Oregon as fast as the same shall, under said grants, be selected and certified, unless the State of Oregon shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the General Land Office to such corporation or corporations upon their payment of the necessary expenses thereof: *Provided,* That this shall not be construed to revive any land grant already expired nor to create any new rights of any kind except to provide for issuing patents for lands to which the State is already entitled." 18 Stat. 80, c. 305.

On the 31st day of May, 1876, Edward Martin, in good faith and for a valuable consideration, $125,000, purchased from the Military Road Company all the lands embraced in the grant to it, except such as it had previously sold, and received a conveyance thereof. Bad faith is not imputed to Martin, and it is only claimed that when he purchased those lands he was chargeable with constructive notice of the acts of Congress, and that no title could pass to the Military Road Company

consistently with the above act of July 2, 1864, granting lands to the Northern Pacific Railroad Company.

By different mesne conveyances, beginning with a deed from Edward Martin dated January 31, 1877, and ending with a conveyance to it of date August 11, 1884, the Eastern Oregon Land Company, a California corporation, became the owner — if the original sale by the Military Road Company passed any title — of all the lands purchased by Martin in 1876.

Among the lands in place that had been selected by the Military Road Company were the northeast quarter and the southeast quarter of section fifteen in township five south of range seventeen east of the Willamette meridian, which was situated in Sherman County, and within the limits of the grant of land in place to the State by the above act of February 25, 1867. That particular body of land was on the south side of the line of "general route" of the Northern Pacific Railroad as delineated on a map filed by that company on the 13th day of August, 1870, and more than twenty and less than forty miles from that line. There never was any definite location of the line of that road opposite this land.

The above tract of land was opened for settlement and sale by the Secretary of the Interior — that officer, the bill alleged, being of opinion that it was excepted from the grant to the State of Oregon in the act of February 25, 1867, and was embraced by the act of July 2, 1864, and by the map of general route filed by the Northern Pacific Railroad Company on the 13th day of August, 1870. In opening this land to settlement and sale the Secretary proceeded, as he supposed, by authority of the forfeiture act of September 29, 1890, by which the United States resumed title to and restored to the public domain all lands theretofore granted in aid of the construction of railroads and which were opposite to and coterminous with the portion of the railroad not then completed and in operation, for the construction or benefit of which such lands were granted. 26 Stat. 496, c. 1040.

Thereupon John D. Wilcox settled upon the particular land above described, and made application to purchase the same under the act of Congress of April 24, 1820, making further

provision for the sale of public lands. 3 Stat. 566, c. 51. Such proceedings were thereafter had on his application that the President on the 28th of September, 1884, issued a patent to him for that tract. Of. the application of Wilcox for the purchase of the land, the Eastern Oregon Land Company had no notice, and therefore, even if its title were not good, it could not have availed itself of the privilege given by the act of Congress of March 3, 1887, 24 Stat. 556, c. 376, to purchase the land.

The present suit was brought against Wilcox by the Eastern Oregon Land Company in the Circuit Court of the United States for the District of Oregon. The bill alleged that a patent having been issued to Wilcox, the Interior Department had no longer jurisdiction to give to it a patent as required by the above act of June 18, 1874, until the patent to the defendant has been cancelled and set aside. As the patent to Wilcox was therefore a cloud upon its title, the plaintiff sought a decree setting it aside, declaring the company to be the owner of the land in Wilcox's possession, and ordering the defendant to convey the land to it. The Circuit Court dismissed the bill. Upon appeal to the Circuit Court of Appeals that decree was reversed, and a decree ordered to be entered in favor of the Land Company. Thereupon Wilcox appealed to this court.

We adjudge, as in *United States* v. *Oregon & California Railroad Company*, just decided, that the act of July 2, 1864, relating to the construction of the Northern Pacific Railroad, only granted lands that were *not* reserved, sold, granted or otherwise *appropriated*, and free from preëmption or other claim, or rights, at *the time the line of that road* was *definitely fixed* and a plat thereof filed in the office of the Commissioner of the General Land Office; that Congress had power to dispose of or appropriate, in its discretion, any lands within the exterior lines of the *general route* of that road by statute passed for the benefit of another company before the Northern Pacific Railroad Company filed a map of "definite location," and that such lands, if not otherwise identified at the date of the passage of the later act than by a plat or map of "general

route," were not excluded from the operation of such an act as lands previously "reserved, sold, granted or otherwise appropriated" by the act of 1864.

As the lands here in dispute are embraced by the granting clause of the act of February 25, 1867, giving lands to the State of Oregon, and are within the lines of the definite location of the Dalles Military Road as shown by its map filed in the Land Department and approved by that department December 18, 1869, and as the route of the Northern Pacific Railroad Company was not then and was not thereafter definitely fixed opposite the lands in dispute, they were earned and appropriated by the Military Road Company under the act of February 25, 1867, and cannot be regarded as embraced by the act of July 2, 1864, for the benefit of the Northern Pacific Railroad Company, which could take under its grant *only* such lands as had *not* been appropriated under the authority of Congress when its line was definitely fixed.

This conclusion is inevitable, unless it be adjudged that it was beyond the power of Congress to appropriate for the Dalles Military Road lands within the general route but not within any line of definite location established by the Northern Pacific Railroad. For the reasons stated in *United States* v. *Oregon & California Railroad*, we cannot so adjudge.

Upon the authority of that case the decree of the Circuit Court of Appeals in this case, reversing the decree of the Circuit Court with instructions to enter a decree in favor of the plaintiff, the Eastern Oregon Land Company, is

*Affirmed.*

Mr. Justice McKenna did not participate in the decision of this case.