Decided 22 July, 1902.

## MESSINGER *v.* UNION WAREHOUSE COMPANY.

[65 Pac. 808.]

DISPUTED QUESTIONS OF FACT ARE FOR THE JURY.

1. Where there is a conflict of testimony as to the facts involved, or where different deductions may be drawn from the undisputed facts, the jury must weigh the testimony and determine its effect.

LANDLORD AND TENANT—JOINT TENANCY IN CROP.

2. An agreement between a landowner and an occupier of his land that the latter may have the use of the premises for a stated share of the crop constitutes the parties tenants in common of the crop—and the owner may at his pleasure and without the consent of the occupier take possession of his share of the crop: *Cooper* v. *McGrew*, 8 Or. 327, applied.

From Sherman : ₀ W. L. BRADSHAW, Judge.

Unsuccessful replevin by F. R. Messinger against the Union Warehouse Company.        AFFIRMED.

For appellant there was a brief over the name of *Huntington & Wilson*, with an oral argument by *Mr. J. B. Huntington.*

For respondent there was a brief over the names of *William H. Wilson* and *J. B. Hosford*, with an oral argument by *Mr. Wilson.*

MR. JUSTICE MOORE delivered the opinion.

This is an action to recover the possession of four hundred and eight sacks of wheat, or the sum of $474.50, its alleged value, in case possession thereof can not be secured. The following statement of facts is deemed essential to a clear understanding of the questions involved : Congress on February 25, 1867, granted to the State of Oregon, to aid in the construction of a wagon road from The Dalles to Fort Boise, the "alternate sections of public lands designated by odd numbers to the extent of

three sections in width on each side of said road," which
the state on October 20, 1868, granted to The Dalles Mili-
tary Road Company, and, the title thereto becoming
vested by mesne conveyances in the Eastern Oregon
Land Company, a corporation, the latter company se-
cured a patent therefor.   For several years prior to
January 8, 1900, a controversy existed between said
corporation and certain settlers upon its lands respect-
ing the validity of the title thereto, but on that date it
was settled by a decree of the Supreme Court of the
United States, confirming the title in the corporation :
*Wilcox* v. *Eastern Or. Land Co.* 176 U. S. 51 (20 Sup. Ct.
269).   Prior to such decree one George Meader, having
taken possession of a quarter section of land within the
limits of said grant, leased the same to the plaintiff, who,
in consideration thereof, agreed to give him in sacks at
Moro, in said county, one fourth of the crop of grain to
be raised thereon in the season of 1900, and in pursuance
of the demise the plaintiff entered into possession and
sowed it to wheat in the fall of 1899.   After said decree
was rendered, the plaintiff, having been notified that
unless he leased said land from the corporation a new
tenant would be put in possession, informed Meader of
the threat, and on March 17, 1900, entered into a con-
tract with said corporation whereby he agreed to give it
one fourth of the wheat to be harvested from said land
during that year.   The plaintiff having threshed the
wheat grown on said land, Meader, on August 31, 1900,
claiming to be entitled to one fourth of the crop under
his lease to the plaintiff, took four hundred and eight
sacks of the grain and delivered the same to the defend-
ant, which issued its warehouse receipts therefor with
knowledge of plaintiff's claim thereto.   The complaint
alleges that plaintiff is the owner and entitled to the im-
mediate possession of said wheat, which is of the value

of $474.50, and that in consequence of the taking thereof he has been damaged in the sum of $100. The answer, after denying the material allegations of the complaint, avers that plaintiff's attornment to the Eastern Oregon Land Company was collusive and made in bad faith. The reply, having denied the material allegations of the new matter in the answer, averred the facts in substance as hereinbefore stated. A trial on these issues having resulted in a judgment against the plaintiff, he appeals therefrom.

1. It is contended that the uncontradicted testimony shows that plaintiff made in good faith a valid attornment to the Eastern Oregon Land Company, to avoid an eviction ; and, this being so, Meader had no right to the wheat which he unlawfully took, and hence the court erred in refusing to instruct the jury, when so requested, to find for the plaintiff. That good faith in the matter of attornment is a necessary ingredient, all the text-books on the subject of landlord and tenant maintain ; but what constitutes *mala fides* in this particular is problematical. It is admitted that the plaintiff, without any judgment or decree of ouster, entered into a contract with the Eastern Oregon Land Company, by the terms of which he admitted that it was the owner of the paramount title ; and the testimony shows that said corporation employed counsel for him, from which it might be inferred that it agreed with him to pay the expenses incident to the trial. We do not wish to be understood as intimating that a valid attornment can not be made to one having a title paramount to that of the landlord without such ouster, for the weight of authority is the other way : *Moffat* v. *Strong*, 9 Bosw. 57. But, from the fact that the attornment was made under the circumstances indicated, the jury might infer collusion ; and, when considered in con-

nection with the other fact that the Eastern Oregon Land
Company employed counsel for plaintiff, it was for the
jury, and not the court, to pass upon the issue of good
faith.   When there is any evidence, however slight, cal-
culated to prove any fact in a case, it is the province of
the jury to weigh it and determine its effect: *Smith* v.
*Shattuck*, 12 Or. 362 (7 Pac. 335); *Patterson* v. *Hayden*,
17 Or. 238 (11 Am. St. Rep. 822, 21 Pac. 129, 3 L. R. A.
529); *Church* v. *Melville*, 17 Or. 413 (21 Pac. 387); *Salo-
mon* v. *Cress*, 22 Or. 177 (29 Pac. 439).   The inference of
*mala fides* which the jury might have drawn, as intimated,
was evidence upon the subject to be considered by them ;
and, this being so, no error was committed in refusing to
instruct as requested.

2.   The court refused to charge the jury, as requested
by plaintiff's counsel, to the effect that a lease of real
property for a share of the crop to be grown thereon,
containing no express reservation of rent, vested the
lessee with the title to the entire crop, in which the lessor
had no interest or title until his share was segregated
and delivered to him, and that he could not take any
part thereof without the lessee's consent, but instructed
the jury, in substance, that if they should find that the
relation of landlord and tenant existed between Meader
and the plaintiff, and was not terminated by the latter's
attornment, his agreement to pay one fourth of the grain
raised on the land made each a tenant in common of the
wheat, whereby the lessor had a right to take his share
of the crop without the lessee's consent.   Exceptions
having been taken to the court's refusal to charge as re-
quested, and to the giving of the instruction complained
of, it is maintained by plaintiff's counsel that errors were
thereby committed.   The question presented by these
exceptions is whether an agreement to cultivate land on

shares, in the absence of any express words on the subject as indicating a contrary intention, constitutes a lease in which the parties sustain the relation of landlord and tenant, or whether the owner impliedly reserves an interest in the crop, which he may take without the occupier's consent. If the former theory be adopted, it follows that the landlord has no title to any part of the crop until it has been delivered to him ; the entire yield of the demised premises being the property of the tenant, who may, if dishonest, dispose of it to the landlord's prejudice, or, if financially embarrassed, whose creditors may seize it by legal process for the payment of their debts. To give to an agreement of this character such a construction would necessarily result in either the execution of written leases in which the rent reserved will be burdened with a lien in express words impressed upon the entire crop for the benefit of the landlord, or the terms of leasing land will be made so burdensome that men of moderate means, who are strangers in a community and unable to secure the payment of rent, will be compelled to remain dependent servants, instead of becoming independent masters. If the opposite system is to prevail, the owner of the land will have a title to an undivided interest in the products of the premises for the use thereof. Such construction of their agreement prevents a tenant from transferring or mortgaging a greater interest in the crop than he owns, and limits the recovery of his creditors to his share only.

In *Cooper* v. *McGrew*, 8 Or. 327, a crop of wheat having been raised upon land under an agreement that the owner of the premises should have the first five hundred bushels that were threshed from the grain grown thereon, as compensation for the use thereof, it was held that such an agreement rendered the owner a tenant in common with the person who raised the grain, and that the latter could

not sell or mortgage a greater interest than he owned therein. In that case the measure of wheat agreed upon for the use of the premises was not a share, in the sense of being a proportional part of the quantity raised; for, if less or no more than so stipulated had been produced, the entire crop would have been the property of the owner of the land. Mr. Freeman, in his work on Cotenancy and Partition (section 100), discussing the question under consideration, says, "Every form of agreement by which land is let to one who is to cultivate the same, and give the owner as compensation therefor a share of the produce, creates a tenancy in common in the crops." The statement thus made is evidently much broader than is warranted by the decisions of the courts of this country, in speaking of which it is said in a note to the case of *Putnam* v. *Wise*, 1 Hill (N. Y.), 234 (37 Am. Dec. 309), "The cases are in almost hopeless conflict as to what is the true construction of an agreement between the owner and the occupier of land for its cultivation on shares, and as to the rights of the respective parties in the land and in the crops." The editors of the American Decisions, in the notes to the case adverted to, have collated the decisions compatible with the doctrine announced in the principal case, from which it appears that, in the absence of any stipulation evidencing a contrary intention of the parties, the rule that an agreement by which land is let to be cultivated for a share of the crops does not constitute a lease, but that the owner and occupier are tenants in common of the products of the soil, prevails in the following states: Alabama, Maryland, Michigan, New Hampshire, New Jersey, New York, and Vermont. We believe the rule adopted in those states is conducive of the best interests of the respective parties, and, while the person who agrees to cultivate the land for a part of the crop has possession of the premises, he

and the owner thereof are tenants in common of the products to be divided, and the latter impliedly reserves the right to remove his share, if necessary, without the consent of the occupier.    Such being the general understanding of the rule announced in *Cooper* v. *McGrew*, 8 Or. 327, it must be assumed, in the absence of anything to the contrary, that Meader and the plaintiff entered into their contract under such conception of the law; and, this being so, no error was committed in refusing to charge as requested, or in giving the instruction complained of, and hence the judgment is affirmed.

AFFIRMED.

Decided 5 August, 1901.