# JOHN A. PEARSON, Respondent, v. MARTIN LAFFERTY, Appellant.

### St. Louis Court of Appeals, March 6, 1917.

1. **LANDLORD AND TENANT: Cropper: Nature of Relation.** The relation of landlord and tenant does not exist between the owner of land and one who cultivates the land under an agreement to give the owner one-half the crop grown thereon, where such other party does not live thereon nor enjoy any right thereto for a fixed period nor have any estate or interest in the land itself or any possession thereof to the exclusion of the owner, and merely has the right to enter upon the land for the purposes of planting, cultivating and harvesting the crop; the possession of the land being in the owner, subject to the right of the cropper to go upon it for the purposes above mentioned.

2. ———: ———: **Division of Crop: Nature of Estate in Crop.** The trend of judicial authority is, that a contract whereby one is allowed the use of land to cultivate, and the owner is to have a share of the produce for its use, will generally create a tenancy in common in the growing crop, whether the agreement operates as a lease or a mere cropping contract.

3. ———: ———: **Advances to Cropper: Right of Landlord to Reimbursement.** Where a cropping contract provides that the landowner shall make advances to the cropper, necessary to enable him to carry out his undertaking, and that the title to the entire crop shall remain in the owner until he has been reimbursed for such advances, the right of the owner to reimbursement for such advances, out of the cropper's share of the crop, cannot be defeated by a mortgage or other attempted disposition of such share.

4. ———: ———: ———: **Chattel Mortgages: Recordation.** Such an arrangement is not, in effect, a chattel mortgage, nor is it necessary that it be recorded in order to make it senior to subsequent mortgages, sales or attachments.

5. ———: ———: ———: ———: ———. Where the relation of landlord and tenant exists, and the landlord seeks by lease to retain a lien on specific property of the tenant, or upon the tenant's portion of the crop, it is held that the lease in this respect operates as a chattel mortgage and must be recorded.

6. **CHATTEL MORTGAGES: Recordation.** The filing of a chattel mortgage within a reasonable time is, by force of section 2861, R. S. 1909, essential to its validity.

7. ——: ——: **Rights of Subsequent Creditors.** Where a chattel mortgage is withheld from record, it is void as to a creditor who extends credit to the mortgagor after its execution and prior to its recordation, regardless of the fact that the creditor had actual knowledge of its existence.

8. ——: ——: ——. It is true that a general creditor has no right to seize the property of his debtor without legal process; but if he obtains peaceable possession thereof, he cannot be disturbed in that possession by a mortgagee whose mortgagee, as to such creditor, is void for failure to file it of record.

9. **CONTRACTS: Parol Contracts: Trial Practice: Question for Jury.** Where a contract is oral, and there is a conflict in the testimony as to its nature, the question as to its character is for the jury.

10. **INSTRUCTIONS: Omissions: Cure by Other Instructions.** An instruction which purports to cover the entire case, but leaves out of consideration elements essential to plaintiff's recovery, is fatally defective, since an instruction which purports to cover the entire case cannot be pieced out by other instructions, despite the oft-stated rule that instructions must be read and considered together.

11. **JUSTICES' COURTS: Appeal to Circuit Court: Form of Verdict and Judgment.** Where a cause is tried on appeal in the circuit court, or other court in the county having jurisdiction on appeal from a justice of the peace, the verdict and judgment should conform to the statute governing judgments in actions of that character in the court wherein the cause is thus tried *de novo*.

12. ——: ——: **Replevin: Form of Judgment.** A judgment rendered by a court of common pleas, in an action of replevin appealed from a justice's court, *held* to be erroneous because not in the form authorized by the statute relating to judgments by a court of record in actions of replevin.

Appeal from the Louisiana Court of Common Pleas.—
*Hon. Edgar B. Woolfolk*, Judge

Reversed and remanded.

*Robt. A. May* and *James E. Pew* for appellant.

*Pearson & Pearson* for respondent.

ALLEN, J.—This is an action of replevin, instituted was entitled to the possession of two hundred and fifty bushels of corn, of the value of $112.50, wrongfully de-before a justice of the peace. Plaintiff alleged that he

tained by defendant. On appeal to the Louisiana Court of Common Pleas, three trials, it is said, were had, two juries being unable to agree. The third and last trial resulted in a verdict and judgment for plaintiff, and the case is here on defendant's appeal.

Defendant, a butcher residing in Louisiana, Missouri, owned a tract of land near that city; and early in 1912 two colored men, Bibb and Johnson, also living in Louisiana, raised a crop of corn upon the land under an oral agreement entered into between defendant and Bibb. Defendant appears to have dealt with Bibb exclusively, and the latter will therefore be referred to as being the other party to the transaction throughout. There is some conflict in the testimony as to the exact nature of this agreement, but it is undisputed that defendant, as owner of the land, was, in any event, to receive one-half of the crop grown thereupon. On June 6, 1912, Bibb executed a chattel mortgage to plaintiff upon the growing crop to secure a note of $102.40, due in December, 1912, for money borrowed from plaintiff; and plaintiff's action in replevin proceeds upon the theory that by virtue of this mortgage he acquired title to Bibb's one-half of the corn raised upon and harvested from this land.

Defendant testified that, as a part of the original agreement, and upon Bibb's solicitation, he agreed to furnish Bibb feed for the latter's horses, and supplies from his butcher shop, to enable Bibb to plant and cultivate the crop; and that it was agreed that defendant would be reimbursed for such advances out of Bibb's half of the corn raised. And defendant further testified that until so reimbursed he was to have and retain title to the entire crop. His testimony proffered along this line was at first excluded, but in answer to a question, to which no objection appears to have been interposed, he said: "He (Bibb) said that he would do it and let me have what I advanced him out of the balance of the crop; it was to be my corn until I got what he owed me out of his half. I was to hold all the corn until he satisfied my account."

Bibb, testifying that defendant was to have one-half of the corn, denied that there was any agreement made to the effect that defendant was to retain the title to the entire crop until he had been reimbursed out of Bibb's one-half thereof for advances made. He admitted, however, that after the making of the agreement and before commencing to plow the land, defendant, at his solicitation, supplied him corn with which to feed his team while "putting in" the crop; and that defendant "was to get that back out of the new corn." He further testified that defendant advanced money to pay for shocking the corn; but further testimony along this line was excluded.

The mortgage executed by Bibb to plaintiff on June 6, 1912, was not recorded until August 2, 1912. There is a conflict in the testimony as to when defendant learned of its existence. Plaintiff testified that he told defendant thereof "a day or two" after its execution; but defendant denies this, and asserts that he knew nothing of the mortgage until the corn had matured and a few loads thereof had been hauled away. It appears that the chattel mortgage purported to convey to plaintiff the entire crop and not merely Bibb's portion thereof.

Defendant undertook to prove that after the execution of the mortgage and while it was withheld from record, he made advances to Bibb, pursuant to the original agreement as testified to by defendant, amounting to $130.89; but the court, on objections of plaintiff's counsel, refused to permit such proof to be made.

The corn raised on defendant's land amounted perhaps to something over eight hundred bushels, and when the crop had matured a few wagon loads were hauled away by Bibb and Johnson—two of which plaintiff received—and the remainder was by them put in cribs on defendant's place, the bulk of it being placed in one crib; it having been agreed between defendant and Bibb that defendant would take Bibb's half of the corn, less the few loads which had been hauled away, at forty cents per bushel, deducting for the advances made to him and paying cash for the remainder, if any.

It appears that plaintiff was informed by Bibb of the proposed "sale" to defendant of Bibb's portion of the corn; and that plaintiff conferred with defendant concerning the same. There is no doubt that the corn sought to be replevied was put in defendant's crib with plaintif's consent, but there is a conflict in the testimony as to the conversation had between plaintiff and defendant concerning the matter. Plaintiff testified that he did not consent to a present sale to defendant; that it was agreed that the corn would be weighed and put in defendant's crib, and that defendant agreed to "take up" the note secured by the chattel mortgage, when due. Defendant, on the other hand, asserts that he merely agreed to pay plaintiff whatever might be found to be due Bibb on a settlement with him. He testified further that on a settlement with Bibb in respect to the advances, it was found that he owed Bibb nothing, but that on the contrary Bibb was still indebted to him in a small sum. And Bibb's testimony is that this was the result of the settlement had between him and defendant.

There is likewise considerable conflict in the testimony as to how much, if any, of the corn sought to be replevied—which defendant was feeding to stock—remained in the crib in question at the time of the institution of the suit. But there is testimony in plaintiff's behalf going to show that at least two hundred and fifty bushels then remained in this crib.

The jury returned a verdict for plaintiff, finding that "the property described in the petition, to-wit, one hundred and ninety bushels of corn, was at the date of the institution of this suit in the possession of the defendant," etc., assessing the value thereof at $76. The judgment entered upon the verdict is that the plaintiff "have and recover of the defendant, Martin Lafferty, $76, the sum aforesaid," together with interest and costs, "and that execution may issue therefor."

That the relation of landlord and tenant did not exist between defendant and Bibb, we think is entirely

clear. The latter was a mere cultivator of defendant's land—a cropper—not living thereupon, and having no estate or interest in the land itself, but the mere right to enter upon it for the purposes of planting, cultivating and harvesting the crop. He enjoyed no right thereto for any fixed period, and had no possession thereof to the exclusion of the owner, as does a tenant. The possession of the land is to be regarded as remaining in the owner, subject to the right of the cultivator to go upon it for the purposes above mentioned. The relation existing between the owner and the cultivator necessarily depends upon the terms of the agreement in each case; and though land be cultivated "on shares" a tenancy may nevertheless exist. Under the facts here present, however, there can be no doubt that Bibb was not defendant's tenant, but a mere cultivator or cropper, whose rights and powers depend upon the nature of the agreement which may be found to have been entered into between him and defendant and acted upon by them. [See Johnson v. Hoffman, 53 Mo. 504; Kamerick v. Castleman, 23 Mo. App. 481; Moser v. Loer, 48 Mo. App. 85; Davies v. Baldwin, 66 Mo. App. 577; Shoemaker v. Crawford, 82 Mo. App. 487; Black v. Scott, 104 Mo. App. 37, 78 S. W. 301; Haggard v. Walker, 132 Mo. App. 463, 111 S. W. 904; Kelly v. Rummerfield, 117 Wis. 620, 98 Am. St. Rep. 951, and note, l. c. 953 et seq; 8 Ruling Case Law, p. 373 et seq; 12 Cyc. 979, 980.]

Apart from divergencies in the results reached in the cases due to differences in the various agreements involved, there is considerable conflict of authority as to the respective interests or rights of the owner and the cultivator or cropper in and to the crop itself. It appears that the trend of judicial authority is to hold that a contract whereby one is allowed the use of land to cultivate, the owner to have a share of the produce for its use, will, in general, at least, create a tenancy in common in the growing crop. And this is said to be so whether the agreement operates as a lease or a mere "cropping contract." [See Johnson v. Hoffman, supra; Kamerick v. Castleman, supra; Moser v. Lower, supra;

Note to Kelly v. Rummerfield, supra, 98 Am. St. Rep. 959 et seq; R. C. L. 374, 375; Davies v. Brown, 34 N. H. 454; Olive v. Martell, 83 Vt. 130; Fuhrman v. Interior Warehouse Co., 64 Wash. 159, 37 L. R. A. (N. S.) 89; Dickey et al. v. Waldo, 97 Mich. 255, 23 L. R. A. 449; Baughman v. Reed, 97 Calif. 319; Sims v. Jones, 54 Neb. 769.]

But cropping contracts frequently provide that until a division is had of the crop, the title and possession thereof shall remain in the owner of the land; and such provisions in contracts of this general character have led to much conflict and confusion in the adjudicated cases. It is unnecessary to discuss the matter at length. In the case before us defendant's testimony is to the effect that the agreement here in question was that he would make advances necessary to enable Bibb to carry out his part of the contract; and that the title to the entire crop should remain in defendant until he had been reimbursed for such advances. When the contract takes this form and the landowner furnishes supplies necessary to enable the other party to produce the crop, it is generally held that his right to reimbursement therefor, out of the other party's share of the crop, cannot be defeated by any mortgage or other attempted disposition of such share in the meantime. [See Booher v. Steward, 75 Hunn 214; Hourland v. McKnight, 79 Ark. 427, 4, L. R. A. (N. S.) 698; Kelly v. Rummerfield, supra, and note in 98 Am. St. Rep. 953 et seq; Almond v. Scott & Co., 80 Ga. 95; 8 R. C. L. 373, 374.] Whether this result be reached by regarding the landowner as having the complete title to the entire crop until the cropper's portion is set over to him, such portion being in the nature of compensation for the latter's services, or by considering the parties as tenants in common of the crop, the landowner having the right to hold the cropper's share as security for advances, as some cases hold, is immaterial here. There is authority for the doctrine that a contract of this character, reserving to the landowner the title to the cropper's share of the crop for advances, is in effect a chattel mortgage, and to be

197 M. A.—9

valid against subsequent mortgagees, purchasers or attaching creditors must be filed for record. [Wright v. Larson, 51 Minn. 321, 38 Am. St. Rep. 504; McNeal v. Rider, 79 Minn. 152.] But we do not regard this as sound or in accord with the weight of authority. [In this connection, see minority opinion in McNeal v. Rider, supra.]

Where the relation of landlord and tenant exists, and the landlord seeks by lease to retain a lien on specific property of the tenant, or upon the tenant's portion of the crop, it is held that the lease in this respect operates as a chattel mortgage and must be recorded. [See Saunders v. Ohlhausen, 127 Mo. App. 54, 106 S. W. 541; Hardin v. Bank, 177 Mo. App. 44, 163 S. W. 306.] But cases of this character have here, we think, no application.

We regard it as quite clear that defendant's claim for advances made Bibb, or for credit extended to him generally, after the execution of the chattel mortgage on June 6, 1912, and before it was filed for record on August 2, 1912, is entirely unaffected by plaintiff's mortgage. It is contended that, until defendant reduced his claim against Bibb to judgment, and secured a lien by execution, he had no right superior to that of plaintiff as mortgagee. But in this counsel are in error. The rule invoked applies to the claims of *prior* creditors, i. e. those whose claims accrued prior to the execution of the mortgage; but if a mortgage is withheld from record, it is *void* as to creditors who extend credit to the mortgagor after the execution of the mortgage and prior to the filing thereof for record. [Williams v. Kirk, 68 Mo. App. 457; Dry Goods Co. v. Brown, 73 Mo. App. 245; Landis v. McDonald, 88 Mo. App. 335; Harrison v. South Carthage Mining Co., 95 Mo. App. 80, 68 S. W. 963; Brunswick-Balke Collender Co. v. Kraus, 132 Mo. App. 328, 112 S. W. 20.] The filing of a chattel mortgage for record, within a reasonable time, is, by force of the statute, essential to its validity. [Harrison v. South Carthage Mining Co., supra, 1. c. 86.] And the creditor's actual knowledge of the existence of the mortgage is

immaterial. [See Landis v. McDonald, supra; Harrison et al. v. South Carthage Mining Co., supra.]

It is true that a general creditor has no right to seize the property of his debtor without legal process; but if he obtains peaceable possession thereof, he cannot be disturbed in that possession by a mortgagee whose mortgage, as to such creditor, is *void* for failure to file the mortgage of record. [Landis v. McDonald, supra; Dunlap v. Dunset, 81 Mo. App. 17.]

Beyond doubt the court erred both in its rulings on the admissions of evidence and in instructing the jury in respect to this matter.

But, without regard to the time of filing the mortgage, if defendant's contract with Bibb was such as he claims, then, for the reasons indicated above, we are of the opinion that plaintiffs mortgage can only attach to whatever may remain of Bibb's portion of the corn after defendant has been satisfied for advances made, pursuant to the contract, to enable Bibb to carry out his portion thereof. As the contract was oral, and as there is a conflict in the testimony as to its nature, the question as to its character is one to be submitted to the jury. [See Moser v. Lower, supra.]

It is unnecessary to discuss the instructions given and refused. It may be well to note, however, that plaintiff's first instruction is fatally defective—irrespective of the theory upon which it proceeds—in that it purports to cover the entire case but leaves out of consideration elements essential to plaintiff's recovery. It is held that an instruction which purports to cover the entire case and directs a verdict, cannot be pieced out by other instructions, despite the oft-stated rule that instructions must be read and considered together. [See Hall v. Coal & Coke Co., 260 Mo., l. c. 369, 168 S. W. 977; Walker v. White, 192 Mo. App. 13, 178 S. W. 254.]

It may be well, also, to observe that the judgment entered below is not in form such as is authorized by the statute relating to judgments in actions of replevin in courts of record. Where a cause is tried on appeal in the circuit court, or other court in the county having

juisdiction on appeal from a justice of the peace, the verdict and judgment should conform to the statute governing judgments in actions of that character in the court wherein the cause is thus tried *de novo*. [See Absher v. Franklin, 121 Mo. App. 29, 97 S. W. 1002.]

The judgment is reversed and the cause remanded, to be proceeded with in accordance with the views expressed above. *Reynolds, P. J.,* and *Becker, J.,* concur.