### No. 8656.

PACE, ET AL. *v.* BECKETT, ET AL.

Decided December 3, 1917.

Action to recover for services rendered in connection with farm cropping contract. Judgment for plaintiffs.

*Reversed.*

1. CONTRACT—*Construction.* A contract for the cultivation of land for a share of the crop is a special one, partaking somewhat of the nature of an adventure. It is not a contract of employment.

2. ACTION—*Breach of Contract.* Under a contract for the cropping of land upon shares, the cropper does not become a servant by a breach thereof on the part of the owner of the land and he can not, on account of such breach, maintain an action upon *quantum meruit* for the value of his services.

3. APPEAL AND ERROR—*Evidence.* In the trial of an action for breach of a cropping contract, it is error to permit the introduction, over objection, of evidence concerning the prevailing rate of wages for work performed by the cropper while carrying out the terms of the contract.

4. *Objections to the Record on Error,* made for the first time in the appellate court, are too late.

*Error to the District Court of La Plata County, Hon. W. N. Searcy, Judge.*

Mr. JAMES A. PULLIAM, Messrs. PERKINS & MAIN, Mr. L. M. PERKINS, for plaintiffs in error.

Messrs. RUSSELL & REESE, for defendants in error.

*En banc.*

MR. JUSTICE ALLEN delivered the opinion of the court.

IT APPEARS from the pleadings and the evidence in this case that on or about February 10, 1914, the defendants below, who owned a tract of land, entered into an oral contract with plaintiffs below, with reference to carrying on farming on the land. By the terms of the agreement the defendants were to furnish the grain necessary to seed the ground, and machinery; the plaintiffs were to do the work of farming, including the irrigation of the land, and were to receive one-half of everything that was raised; and the defendant A. L. Pace was to show the plaintiffs "about irrigating" and how and where to do the work pertaining to the cultivation and raising of the crops.

On September 1, 1914, the plaintiffs below brought this action against the defendants below. The complaint briefly mentions the contract above referred to, and then alleges, in substance, that pursuant to the agreement the plaintiffs worked on the land, each of them about five months, having worked almost continuously until and including the 9th day of July, 1914. The complaint further alleges, in effect, that the contract was wrongfully terminated by the defendants on July 9, 1914 and plaintiffs were no longer permitted to work thereunder or to have any further control over the crops raised or to be raised under the contract; that certain planting was done by the plaintiffs and that the defendants have received the benefit thereof; that plaintiffs worked and irrigated about thirty acres of timothy hay; and that the reasonable value of the services performed by plaintiffs for defendants under the contract is $780.00, which the defendants have never paid plaintiffs, save and except a certain sum in cash and a certain amount of groceries. The prayer is for the recovery of the value of the services mentioned, less the items received from defendants.

The defendants filed an answer which, for the purposes of this review, may be regarded as a general denial. Defendants also filed a cross-complaint concerning matters which are not involved in any assignment of error.

Upon trial, the jury found the issues for the plaintiffs. Thereafter judgment was entered in favor of plaintiffs and the defendants bring error.

At the trial, which was to a jury, the plaintiffs introduced evidence tending to prove the contract above mentioned, that the contract had been performed in part by the plaintiffs, and that its further performance had been prevented by the act of the defendants. On cross-examination a witness for the plaintiffs testified that plaintiffs "never had any understanding with either Mr. or Mrs. Pace that they should be paid by the day, and the only understanding and agreement was that they should get their pay out of the crop that was raised on the place."

Over the objections of the defendants the plaintiffs testified that the customary and prevailing wage for men doing such work as the plaintiffs did, in that vicinity, during that period of time, was $1.50 a day and board or $2.00 a day and board yourself."

The admission of this evidence, that the usual and customary wages paid for labor was $2.00 per day, is assigned as error.

The plaintiffs, defendants in error here, contend that since they have performed, in part, a specific agreement and further performance has been prevented by the act of the defendants, they, the plaintiffs, are entitled to recover of and from the defendants what the former's services were reasonably worth, measured by the prevailing rate of wages paid for similar work.

If the contract between plaintiffs and defendants was one of employment, or if by reason of the contract the plaintiffs were servants of the defendants, the theory upon which the case was conducted, and the rule now contended for, by the plaintiffs would be correct.

We cannot, however, regard the contract as one of employment. The parties were not, among themselves, masters and servants. The contract was one for the cultivation of land for a share of the crops. There is much diversity in the decisions of the courts as to the nature of such contracts and the measure of damages for breach of the same. In so far as the intention of the parties is concerned, the record in this case is unfavorable to the conclusion that the parties regarded the contract as one of employment. In the complaint the plaintiffs refer to the contract as a "lease" and "agreement of lease," and that they worked "under the terms of said lease." T. B. Beckett, one of the plaintiffs, testified that the land of the Paces was "leased." In considering the authorities, it seems that the most satisfactory view of such contracts as the one in question is that they are special, partaking somewhat of the nature of an adventure, entitling the party to a chance in the profits or benefits derivable therefrom. This view more nearly

carries out the intention of the parties than any other. Such appears to be the nature of the contract between the parties that is the subject of this controversy. It was not a contract of employment. The plaintiffs were not servants of the defendants, either before or after the breach of the agreement by defendants. Reasons for this conclusion can be found in the case of *Bowers v. Graves & Vinton Co.,* 8 S. D. 385, 66 N. W. 931, from which we quote extensively later in this opinion. Other authorities in support of this view are: *Taylor v. Bradley,* 39 N. Y. 129, 100 Am. Dec. 415; *James v. James,* 151 Wis. 78, 137 N. W. 1094; and *Cull v. San Francisco, etc., Land Co.,* 124 Calif. 591, 57 Pac. 456.

The defendants in error, plaintiffs below, in their brief say: "Under the decisions, as we read them, this was what is termed a 'cropping contract,' rather than a lease." Assuming that this statement is correct, it is not sufficient to support plaintiffs' theory that they could recover as for work and labor and that the evidence as to the prevailing rate of wages was admissible. The syllabus in 124 Calif. 591, in the case of *Cull v. San Francisco, etc., Land Co., supra,* reads as follows:

"A contract for the cropping of land upon shares does not include any element of a contract of employment; and there being no original employment by the terms of the contract, the cropper does not become a servant or employe by the breach thereof on the part of the owner of the land, and he cannot, on account of such breach, maintain an action upon a *quantum meruit* for the value of his services."

In the case of *Bowers v. Graves & Vinton Co., supra,* the same contention was made by a cropper, and the same relief sought, as that by the plaintiffs in the instant case, except that in the Bowers case the compensation claimed was a certain sum per acre. The farming or cropping contract involved in that case was very similar to the one in the case at bar, under the terms of which each party was to receive a share of the crops raised. The case was brought on the same theory as that on which the plaintiffs

here have proceeded.   The supreme court of South Dakota in the case just mentioned, among other things, said: .

"The contract in this case belongs to that class of contracts for the cultivation of lands for a share of the crop that has given rise to much diversity in the decisions of the courts as to their nature and the measure of damages for a breach of the same.   Some courts have been inclined to regard them in the nature of leases and to apply to them the rules applicable to breaches of contracts for leasing. Other courts have treated them as more in the nature of contracts for hire, the services to be paid for by a share of the crop.   *Porter v. Chandler,* 27 Minn. 301, 7 N. W. 142; Am. & Eng. Enc.. Law, pp. 897-899.   Much of this diversity in the decisions has undoubtedly arisen by reason of the various stipulations in such contracts, in which slight changes in their terms have produced important differences in the views of courts as to the character of the contracts and the rules that should govern the measure of damages for breach of the same.   *Warner v. Abbey,* 112 Mass. 355.   In the early case of *Walker v. Fitts,* 24 Pick. 191, the supreme court of Massachusetts, in discussing a contract quite similar to the one before us, says:   'The occupant was not the mere servant of the owner.   It was not a contract of hire, in which the laborer was to receive a portion of the crop as a compensation for his services.   It was not a mere license to enter upon and cultivate the farm, nor a tenancy at will.   He had a right to occupy, and an interest in the land.   *   *   *   The owner could not exclude him, nor maintain an action against him for anything done in pursuance of the agreement.   But what the precise nature and character of his interest was, is not so easily determined.'   And the court of appeals of New York, in the well-considered case of *Taylor v. Bradley,* 39 N. Y. 129, take the same view of contracts of this class, and hold that such contracts are special, and partake somewhat of the nature of an adventure, entitling the party to a chance in the profits or benefits derivable therefrom.   This seems to us to be the most satisfactory view of such contracts, and

one that more nearly carries out the intention of the parties than any other. That such is the nature of the contract before us seems clear from its terms. * * * He (the cropper) is subject to no direction of the defendant, other than to sow and plant said land in such crops as the defendant should direct. He is not subject to the orders, nor under the control, of the defendant, in the performance of his labors. He is in fact, his own master, and master of such help as he might employ. His services are not to be paid for by any definite or fixed standard, but depend entirely upon the nature and value of the crop. If the season is a favorable one, his remuneration may be large; if unfavorable, his crop may be light, and his remuneration or profits small; and the remuneration of the owner of the land for its use is subject to the same contingencies. In entering into the contract therefore, the plaintiff must be presumed to have taken into consideration all these circumstances, and elected to make the venture, and take the chances of success or failure.

"* * * But the plaintiff cannot claim that, by reason of the breach, the relations of the parties to each other have been changed. If the plaintiff was not a servant or employe of the defendant under the terms of the contract, he does not become such by the breach thereof.

"* * * The defendant had neither directly nor indirectly assumed the payment for any such services, as such, * * *."

The court in *Bowers v. Graves & Vinton Co., supra,* overruled the plaintiff's contention hereinbefore mentioned.

In the case of *Rockwell Stock Co. v. Castroni,* 6 Colo. App. 521, 42 Pac. 180, the plaintiff was prevented by defendant from carrying out a partnership agreement to raise hens, chickens and eggs for market, after plaintiff has spent about three months' time in acting under the agreement. The plaintiff in that case brought an action to recover, among other items, $100.00 for one hundred days lost time, at $1.00 a day. As in the case at bar, and also as in the Bowers case in South Dakota, the remuneration of the

plaintiff under the contract in the Castroni case depended on the profits of the enterprise, and the services were "not to be paid for by any definite or fixed standard" and the defendant had not assumed the payment for such services, as such. In the Castroni case the plaintiff at the trial was permitted, over the objections of the defendant, to offer evidence in regard to the item of $100.00 for one hundred days time lost. The Colorado Court of Appeals in reversing the case said:

"The chief trouble is the case was not correctly conceived and it was tried on a wholly erroneous hypothesis. * * * when the company refused to carry (the agreement) out it was guilty of a breach of contract for which it must respond in damages.

\*         \*         \*         \*         \*         \*

"The damages, however, do not take the form of the *per diem* value of the labor of the person against whom the wrong was committed. The court clearly erred in admitting proof concerning the value of her time for one hundred days."

The opinion in the case of *Smart v. Burquoin,* 51 Wash. 274, 66 Pac. 666, indicates that the court there took a view similar to that entertained by the court in the case of *Bowers v. Graves & Vinton Co., supra.* The court said:

"In this case the pleadings show that appellants seek to recover upon a *quantum meruit* the value of their plowing, while holding under a lease with the rent reserved in kind, with no promise or obligation whatever upon the respondent to pay in money for any work done in tilling the land. * * * If they (the appellants) were evicted, they have mistaken their remedy."

The claim of the plaintiffs in the case at bar for a *per diem* compensation for their services is quite analogous to that of the plaintiff in the case of *Rockwell Stock Co. v. Castroni, supra,* and as said in that case, "the court erred in admitting testimony concerning what should constitute the measure of damages." In all the cases cited herein and in the case at bar there was no agreement to pay in money

for any work done under the contract. As in the case of
*Smart v. Burquoin, supra,* the plaintiffs "have mistaken
their remedy," and as in the Castroni case, the plaintiffs
proceeded "on a wholly erroneous hypothesis."

Under the principles laid down in the authorities quoted,
it was error for the trial court to overrule defendants' ob-
jections to the admission of testimony concerning the pre-
vailing rate of wages for men doing the work which plain-
tiffs did under the contract in question, and the value of
plaintiffs' services measured by such *per diem* rate.

It is not necessary to consider other assignments of error.
The defendants in error in their answer brief raise some
objections to the record on error. These objections are
made for the first time in the answer brief and after plain-
tiffs in error had prepared and filed their abstract of record
and their brief. Under these circumstances the objections
must be deemed to have been made too late. *Lavelle v.
Julesburg,* 49 Colo. 290, 302.

For the reasons hereinbefore stated, the judgment is re-
versed and the cause remanded for further proceedings not
inconsistent with the views herein expressed.