(No. 4867. June 6, 1928.)

THE DEVEREAUX MORTGAGE COMPANY, a Corporation, Respondent, v. WILLIAM A. WALKER and LAVINA WALKER, His Wife, E. J. TAYLOR, D. A. SPAULDING, C. B. WALKER, UTAH SAVINGS AND TRUST COMPANY, Receiver for the CONSOLIDATED WAGON AND MACHINE COMPANY, an Insolvent Corporation, and J. S. HALEY, Defendants, and THE FIRST NATIONAL BANK OF DRIGGS, a National Banking Association, Defendant and Appellant.

[268 Pac. 37.]

432

F. L. Soule, for Appellant.

H. J. Swanson, for Respondent.

BAKER, Commissioner.—In 1920 William A. Walker and wife, to secure the payment of certain notes then made by them and later transferred to the appellant, the First National Bank of Driggs, Idaho, gave their chattel mortgage covering, with other property, the crops to be grown during the years 1921 to 1925, inclusive, upon particularly described land in Madison county. The land upon which the crops were to be grown was at that time mortgaged to the respondent, the Devereaux Mortgage Company. The real estate mortgage was later foreclosed and the property was sold, at a date not shown, to the respondent. On April 23, 1923, the respondent and the Walkers entered into an agreement, called a lease, by the terms of which the respondent did "let and farm lease" the real property to the Walkers for the period of one year. Various provisions of the agreement indicate the parties contemplated the operation of the property during the year 1924 under the same contract. The Walkers, called "lessees," covenanted "to pay as rental for said premises one-third of all crops planted and grown upon said premises . . . . to be delivered at the warehouse in Rexburg free of cost to The Devereaux Mortgage Company." It was further provided that upon the default of the lessees, the lessor might terminate the agreement and

in that event the lease should "become a lien on any crops that may be at that time in the ground or on the premises for any unpaid rental or any share due or to become due as rental." The 1923 crop was sold by the bank under foreclosure of its chattel mortgage and no part of the crop was delivered to the respondent. After the 1924 crop had been harvested, removed from the premises and placed in a warehouse the respondent commenced this action to recover one-third of the same, and asserted the priority of its claim over the lien of the appellant. By cross-complaint, the appellant sought to foreclose the crop mortgage held by it and asserted the priority of its mortgage lien over any claim or interest of the respondent. The crop was sold and the proceeds were paid into court to await the determination of the action. The trial court decreed that one-third of the proceeds, with respondent's costs, be paid to it and that the balance be paid to the appellant bank.

The appellant takes the position that since the agreement did not expressly reserve to the respondent title to the crop, the Walkers owned it by absolute title, and that the lien of appellant's mortgage attached to the entire crop; that respondent's claim was at most a lien to become effective only upon the termination of the agreement and that such lien, when it came into existence, if at all, was subsequent in time and in right to the lien of its mortgage.

The sole question presented is whether the mortgage of the appellant constitutes a lien upon the share of the crop claimed by the respondent. The validity of the mortgage is, in all other respects, apparently conceded.

It has become the settled law of this state that a mortgage upon crops to be thereafter sown and grown attaches as a lien only to the interest held or retained by the mortgagor in such crops when they come into being. (C. S., sec. 6373; *Green v. Consolidated Wagon & Machine Co.*, 30 Ida. 359, 164 Pac. 1016; *Twin Falls Bank & Trust Co. v. Weinberg*, 44 Ida. 332, 257 Pac. 31.) The appellant therefore, had no greater interest in the crop than the Walkers had.

Contracts by the terms of which the owner of land gives to another the right to occupy and farm the land for a particular period upon the promise and agreement of the other to deliver and return a definite part of the crops to be grown on such land have resulted in much litigation with a variety of results.

The great majority of cases hold that a co-ownership is created between the land owner and the grower in all crops grown by the latter while in possession of land under an agreement by which he covenants to deliver a portion of such crops to the owner of the land. The following authorities, among many others, support that rule: 8 R. C. L., p. 374, sec. 21; *Fuhrman v. Interior Warehouse Co.,* 64 Wash. 159, 116 Pac. 666, 37 L. R. A., N. S., 89; *Pearson v. Lafferty,* 197 Mo. App. 123, 193 S. W. 40; *Putnam v. Wise,* 1 Hill (N. Y.), 234, 37 Am. Dec. 309; *Bernal v. Hovious,* 17 Cal. 542, 79 Am. Dec. 147; *Knox v. Marshall,* 19 Cal. 617; *Baughman v. Reed,* 75 Cal. 319, 7 Am. St. 170, 17 Pac. 222; *Woodsend v. Chatom,* 191 Cal. 72, 214 Pac. 965; *Olin v. Martell,* 83 Vt. 130, 138 Am. St. 1072, 74 Atl. 1060; *Messinger v. Union Warehouse Co.,* 39 Or. 546, 65 Pac. 808; *Halsey v. Simmons,* 85 Or. 324, 166 Pac. 944, L. R. A. 1918A, 321; *Niagara Oil Co. v. Ogle,* 177 Ind. 292, Ann. Cas. 1914D, 67, 98 N. E. 60, 42 L. R. A., N. S., 714; *Sims v. Jones,* 54 Neb. 769, 69 Am. St. 749, 75 N. W. 150; *Olson v. Olson,* 168 Ill. App. 358; *Brown v. Lincoln,* 47 N. H. 468; *Kuiper v. Miller,* 53 N. D. 711, 207 N. W. 489; *First National Bank v. St. Anthony & Dakota Elev. Co.,* 171 Minn. 461, 214 N. W. 288; *Straight Bros. Co. v. Chicago, M. & St. P. Ry. Co.,* 183 Iowa, 934, 167 N. W. 705. To these might be added the case of *Jensen v. Anderson,* 50 Utah, 515, 167 Pac. 811, in which the land owner was permitted to recover his share in replevin action.

While the very great majority of cases are to the effect that the owner of land has a property interest in the crops before division and delivery and that he and the producer own the crops, there is much diversity of opinion as to the reason for that conclusion and the proper classifi-

cation of the relation created by their agreement. Probably the greater number of courts base their decision upon the ground that in the absence of qualifying provisions evincing a contrary intent, contracts whereby one gives to another the use of land to cultivate upon the agreement on the part of the other to return a specified portion of the crops produced create a tenancy in common in the crops whether the agreement be a lease or a cropping contract, and it is of no consequence that the agreement be denominated a "lease" and the share to be delivered "rental." The reasoning is that the parties intended that the occupier of land, whether he be called tenant, cropper, servant or contractor, shall deliver to the land owner, not a sum of money equal to the value of the share of the crop but the particular portion of the crop he agreed to deliver; that the owner of the land is entitled to receive a particular share or portion of the crops produced on his land and is not merely the holder of a claim or demand against the occupier, for a sum equal to the value of a particular portion or share of the crop at the time and place of delivery, to be enforced by the recovery first of a personal judgment. It is also frequently said that the right of the tenant to the exclusive possession of the land and to the crops until ready for division and delivery or the ownership by another with the tenant of an interest in the crops is not inconsistent with the relation of landlord and tenant as to the land. The cases last cited support the above statements.

In these cases the following pronouncement by the court in *Fuhrman v. Interior Warehouse Co., supra,* is frequently quoted with approval:

"The weight of authority is that every contract whereby use of land is given to a party to cultivate and return to the owner a specified portion of the crop produced, creates a tenancy in common in the crop, and this is true whether the agreement between the parties is a lease or a mere cropping contract. The tendency of the courts is to hold that, whenever there is a provision in any form of contract for a specific division of crops produced, a tenancy in com-

mon arises therein. (Citing cases.) In *Smyth v. Tankersley, supra* (20 Ala. 212, 56 Am. Dec. 193), the court said: 'In the case of *Thompson v. Mawhinney* (17 Ala. 362, 52 Am. Dec. 176), *supra,* it was decided by this court that a contract made with the owner of land, which the other party agreed to cultivate and to divide the products equally with him, was not, technically speaking, a lease, but that a tenancy in common was created in the products. In the contract under consideration, the mode of compensation adopted repels the conclusion that it could have been the intention of the parties that the land should not be cultivated, and thus assimilates its terms more closely to the contract in the case last cited. It is true the phraseology adopted is that which is usual in leases, but the substance of the agreement is to be regarded, rather than the words, (*Putnam v. Wise, supra,* 1 Hill (N. Y.), 234, 37 Am. Dec. 309) ; and in contracts of this description the true test seems to be that, wherever provision is made for dividing the specific products of the land, a tenancy in common results. . . . . ' ''

In *Woodsend v. Chatom, supra,* the supreme court of California cited with approval early California cases to the effect that tenancy in common in crops resulted from contracts by which one who occupied land agreed to deliver specific portions of the crop for the privilege of using the land but did not refer to the later cases holding that tenancy in common could be created only by special provisions in the contract. The court said:

''The greater weight of authority and the better reasoning is to the effect that whether the relationship existing between Wyllie and respondent be that of landlord and tenant or a cropping relation, a tenancy in common in the crops was created by the terms of the contract.''

Many similar statements are found in other cases. In *Underhill v. Allis-Chalmers Mfg. Co.,* 15 Fed. (2d) 181, it is said: ''Under the great weight of authority in other jurisdictions, in the absence of qualifying provisions evincing a contrary intent, a contract whereby the use of land

is given to a person to cultivate and return to the owner a specified portion of the particular crop produced thereon creates a tenancy in common in the crop, and this is true whether the agreement between the parties is a lease or a cropping contract."

In *De Wolfe v. Kupers*, 106 Or. 176, 211 Pac. 927, the owner of land "in consideration of the rental" provided, did "lease and farm let" to the defendant's assignor certain land for a particular period, at the end of which the "lease" should expire and terminate. The other party agreed "to pay as rental two-fifths of all the grain and hay grown on the said land, delivered at the warehouse or on board the car." The court there said:

"Reserving as rent an aliquot part of the crop made the landlord and the tenant tenants in common of the crop."

Some of the courts conclude that agreements of the character here involved are special contracts and partake of the nature of joint adventures. (*Pace v. Beckett*, 69 Colo. 90, 169 Pac. 142, L. R. A. 1918B, 1053; 33 C. J., p. 843; *Taylor v. Bradley*, 39 N. Y. 129, 100 Am. Dec. 415.)

Other courts say that the right of the land owner to a share in the crop is one retained by him as an exception to or reservation from the property demised. (*Underhill v. Allis-Chalmers Mfg. Co.*, supra; *Messinger v. Union Warehouse Co.*, supra; *Brown v. Lincoln*, supra; *Merchants' State Bank v. Sawyer Farmers' Co-operative Assn.*, 47 N. D. 375, 14 A. L. R. 1353, 182 N. W. 263.)

The theory of cotenancy is favored. Even in the cases where the contract expressly provides that the title to the crops grown shall remain in the land owner until division, it is held, almost without exception, that the tenant or occupier of the land and the land owner are tenants in common of the crops. (*Minneapolis Iron Store Co. v. Branum*, 36 N. D. 355, 162 N. W. 543, L. R. A. 1917E, 298; *Strangeway v. Eisenman*, 68 Minn. 395, 71 N. W. 617; *McNeal v. Rider*, 79 Minn. 153, 79 Am. St. 437, 81 N. W. 830; *Rew v. Maynes,* 147 Iowa, 15, 125 N. W. 804;

*First National Bank v. St. Anthony & Dakota Elev. Co.,
supra; Merchants' State Bank v. Sawyer Farmers' Co-
operative Assn., supra.*)

Some of the courts, which apparently do not recognize as fully as others the cotenancy theory, state the rule to be that the land owner has an equitable and mortgagable interest in such crops while growing and that a mortgage given by him takes priority over an interest subsequently acquired by a creditor through service of notice of garnishment on the occupier. (*Riddle v. Dow,* 98 Iowa, 7, 66 N. W. 1066, 32 L. R. A. 811; *In re Grooms' Estate,* 204 Iowa, 746, 216 N. W. 78.)

The cases which deny any interest or title on the part of the land owner in the crops before division and delivery base their conclusions upon the idea that no relation other than that of landlord and tenant is created by an agreement by which the use of land is given to another who agrees to return a specific interest in the crops produced. Among these is *Eaves v. Sheppard,* 17 Ida. 268, 134 Am. St. 256, 105 Pac. 407. In that case the rule was briefly stated, no reason was given for it, no comment was made on the contrary rule, no exceptions were recognized and but two early cases from the state of Maine were cited in support of the rule there stated.

In the contract in question the Walkers covenanted to deliver to the respondent at an agreed place one-third of the products of the land, not to pay a sum equal to the value of that share of the crops. They were not given the right to elect whether they would deliver crops or pay value or given authority to sell and then make division. Their contract was to deliver a share of the crops and nothing else. It simply was that the respondent should furnish the land and the Walkers should do and furnish all other things necessary to the production of a crop and that the compensation to the respondent for the use of its land and the compensation to the Walkers for their labor would be in crops in the proportion agreed upon. Contracts of this character are common and there would seem to be

much in them to commend them to land owners and producers of crops. Each has the assurance that the abundance of the crops and the prosperity of the season will be controlling elements in determining the profits he will realize from the season's operations. To hold that each party has at all times an ownership in the growing crops proportionate to the share he will ultimately receive, though the right to the possession be in the producer until harvested, will best effectuate the intention of the parties, and to ascertain intention rather than classify relations created should, it would seem, be the principal concern of the court.

If it be held that the land owner has no interest in the crops and that his only remedy is to recover a personal judgment against the occupier for a sum equal to the value of a share of the crops, the essential agreement of the parties is defeated, a dishonest tenant is enabled to dispose of the entire crop, his creditors can seize and sell the entire crop for the payment of their debts. The land owner is obliged to stand by, without right to process, though he may have full knowledge that the property which the other had agreed to deliver was being dissipated by him or converted by others. To construe such a contract as investing the grower with complete title and denying the land owner any title not only ignores the very purpose and intention of the parties but substitutes a different contract in the place of the contract the parties have made.

The majority rule protects each party, assures him of his right to receive the identical property the other agreed he should have and denies the right of the other to dispose of, and his creditors to reach, more than the share to which he is justly entitled.

In this case the delivery of respondent's share or the payment of its value, if the latter could be said to have been the agreement of the parties, could not have been secured by crop mortgage in the face of the record of appellant's mortgage.

The proviso contained in C. S., sec. 7372, exempting from the lien of a farm laborer the share or interest of a lessor

in any crops grown on premises leased in consideration of a share in such crops amounts to a legislative recognition of the majority rule.

The case of *Eaves v. Sheppard, supra,* is contrary to the majority and, we think, the better rule is not supported by the later cases and ignores the evident intention of the parties as expressed in their agreement. We therefore recommend that said case be overruled and that the judgment appealed from be affirmed, with costs to respondent.

Varian and Brinck, CC., concur.

The foregoing is approved as the opinion of the court, and the judgment is affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Taylor and T. Bailey Lee, JJ., concur.

Budge and Givens, JJ., dissent.